# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBERT BOSCH LLC, )
)
   Plaintiff, )
)
   v. )  Civil Action No. 12-574-LPS
)
ALBEREE PRODUCTS, INC., )
API KOREA CO., LTD., and )
SAVER AUTOMOTIVE PRODUCTS, )
INC., )
)
   Defendants. )

---

David E. Moore, POTTER ANDERSON & CORROON, LLP, Wilmington, DE

Mark A. Hannemann, KENYON & KENYON, LLP, New York, NY

  Attorneys for Plaintiff


Sean T. O'Kelly, O'KELLY, ERNST, BIELLI & WALLEN, LLC, Wilmington, DE

Robert J. Kenney, Michael B. Marion, BIRCH, STEWART, KOLASCH & BIRCH, LLP, Falls Church, VA

  Attorneys for Defendants

---

## **MEMORANDUM OPINION**

September 29, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are Defendants Alberee Products, Inc. ("Alberee"), API Korea Co., Ltd. ("API"), and Saver Automotive Products, Inc.'s ("Saver") (collectively, "Defendants") motions to dismiss Robert Bosch LLC's ("Bosch" or "Plaintiff") patent infringement claims, pursuant to Federal Rule of Civil Procedure 12(b)(2) (D.I. 45, 46), as well as Plaintiff's request for jurisdictional discovery (D.I. 49 at 19-20).

## BACKGROUND

### I.   The Parties

Bosch is a limited liability company organized under the laws of Delaware, which markets and sells beam wiper blades in the United States. (D.I. 39 at 2; D.I. 41 at ¶ 3) It asserts ownership of the various patents-in-suit in this matter: U.S. Patent Nos. 6,523,218 ("the '218 patent"), 6,530,111 ("the '111 patent"), 6,553,607 ("the '607 patent"), 6,611,988 ("the '988 patent"), 6,675,434 ("the '434 patent"), 6,836,926 ("the '926 patent"), 6,944,905 ("the '905 patent"), 6,973,698 ("the '698 patent"), 7,228,588 ("the '588 patent"), 7,293,321 ("the '321 patent"), 7,523,520 ("the '520 patent"), 7,484,264 ("the '264 patent"), and 8,099,823 ("the '823 patent") (collectively, "the Bosch patents"). (D.I. 38 at ¶¶ 21, 47, 61, 75, 101, 127, 153, 179, 205, 231, 257, 283, 309). The Bosch patents are generally directed to improvements over conventional bracketed windshield wiper blades.

Alberee is a corporation organized under the laws of the state of Maryland with a place of business in Halethorpe, Maryland. (D.I. 38 at ¶ 2) API is a corporation organized under the laws of Korea with a place of business in Incheon, Korea. (*Id.* at ¶ 3) Saver is a corporation organized under the laws of the state of Maryland with a place of business in Halethorpe,

1

Maryland. (*Id.* at ¶ 4) Each of the Defendants' businesses relate to the production, manufacture and/or sale of windshield wiper blades.

## II. Procedural Background

On May 4, 2012, Bosch commenced this action, asserting that API and Alberee (doing business as Saver) each directly and indirectly infringed certain claims of all of the Bosch patents (except for the '823 patent, which was not referenced). (D.I. 1 at ¶¶ 5-160) On December 14, 2012, API and Alberee filed a motion to dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (D.I. 28) In doing so, they asserted that Alberee and Saver were separate entities. (D.I. 29 at 1-2)

Thereafter, on January 18, 2013, Bosch filed an Amended Complaint. (D.I. 38) In its Amended Complaint, Bosch added additional allegations regarding the alleged infringement, identified Saver as a separate defendant as to all claims, and added a count of infringement regarding the '823 patent. (D.I. 38)

In response to the filing of the Amended Complaint, Defendants filed the instant motions to dismiss pursuant to Rule 12(b)(2). (D.I. 45, 46)[1] Briefing on these motions was completed on March 18, 2013. (D.I. 50)

---

[1] Upon the filing of the Amended Complaint and Defendants' newly-filed Rule 12(b)(2) motions, the original motion to dismiss that had been filed on December 14, 2012 (D.I. 28) was terminated as moot. In their briefing regarding the instant motions to dismiss, the parties also make reference to briefs (D.I. 29, 39, 48) relating to the December 14, 2012 motion to dismiss.

## III. Factual Background

In the Amended Complaint, Plaintiff asserts against Defendants thirteen counts of direct and indirect infringement of the Bosch patents. (D.I. 38 at ¶¶ 20-333) In the "Defendants And Accused Products" section of the Amended Complaint, Plaintiff sets out its factual allegations relating to personal jurisdiction. (D.I. 38 at ¶¶ 2-19) Plaintiff also points to other evidence of record in support of its jurisdictional allegations. The Court summarizes Plaintiff's relevant allegations and citations to facts of record below, noting where any such facts appear to be disputed by Defendants.

API manufactures a large number of windshield wiper blade components in Korea and sells them to companies in the United States, including Alberee. (D.I. 29, Ex. A at ¶ 2; D.I. 38 at ¶¶ 9-10) Alberee takes possession of these components in Korea, and imports them into the United States through Los Angeles, California. (D.I. 29, Ex. A at ¶ 6) Plaintiff alleges that after receiving these components from API, Alberee and Saver work together at their offices in Maryland to assemble the components into automotive windshield wiper blades that are marketed and sold in the United States. (D.I. 29, Ex. A at ¶ 7; D.I. 38 at ¶¶ 9-10)[2] Saver has offered for sale and sold these wiper blades in the United States to retail stores (which in turn sell them to end user customers). (D.I. 29, Ex. A at ¶¶ 3, 11; D.I. 38 at ¶¶ 11-12; D.I. 42, exs. C-E) Saver sells the wiper blades under various brand names, including Goodyear Assurance, Saver Arc Flex Ultra, and Touring Ultra (hereinafter, the "Accused Products"). (D.I. 38 at ¶ 10)

---

[2] Alberee, citing to an affidavit of its owner and president, Albert Lee, asserts that it manufactures the wiper blades at issue, and that Saver's role is simply to sell the wiper blades to retailers. (D.I. 29 at 3, Ex. A at ¶¶ 3, 7) There is other evidence of record, however, indicating that Saver also develops and/or manufactures windshield wiper blades, including the Goodyear Assurance product. (D.I. 40 at ¶ 4 & Ex. C; D.I. 42, ex A)

In particular, Saver is the exclusive seller of the Goodyear Assurance wiper blades to the nationwide Costco Wholesale ("Costco") retail chain in the United States, and has been for at least three years. (D.I. 29, Ex. A at ¶¶ 3, 7, 11; D.I. 38 at ¶¶ 13-15; D.I. 41 at ¶ 4) Bosch estimates that Costco has sold several million units of these Goodyear Assurance wiper blades annually during this period. (D.I. 41 at ¶ 4) Among Costco's hundreds of retail locations is one located in Newark, Delaware, where Costco has sold "significant quantities"[3] of the Goodyear Assurance wiper blades, up through at least January 2013. (D.I. 38 at ¶¶ 13-15; D.I. 40 at ¶ 5; D.I. 42, Ex. B) Via Saver's sale of the Goodyear Assurance products to Costco, Saver purposefully ships wiper blades through an established distribution channel into the State of Delaware. (D.I. 29, Ex. A at ¶¶ 2-3, 11; D.I. 38 at ¶ 15; D.I. 41 at ¶ 4; D.I. 42, Ex. A)

As to the inter-relationship among Defendants, API and Alberee are alleged to have worked together on a joint development project, through which they developed the allegedly infringing wiper blades; the owner of API (Choon Bae Lee) and the owner and president of Alberee (Albert Lee) are also named as a co-inventors on a Korean patent application that relates to those wiper blades. (D.I. 38 at ¶¶ 17-18; D.I. 42, exs. J-K) Alberee and Saver are alleged to have held themselves out as related companies and to have business locations at the same address in Halethorpe, Maryland. (D.I. 38 at ¶¶ 2, 4, 5-7)[4] The president and owner of Alberee, Albert

---

[3]For example, there is evidence that on one day in January 2013, the Newark Costco had 16 boxes of Goodyear Assurance wiper blades for sale, each of which contained multiple packages of individual wiper blades. (D.I. 40 at ¶ 5 & Ex. D)

[4]Alberee contends that it and Saver are "distinct and different companies." (D.I. 29 at 2 & Ex. A at ¶¶ 2-4) There is evidence, however, indicating that Alberee and Saver have (at least to some degree) held themselves out as the same entity or at least as related entities. (*See* D.I. 42, Ex. M (Maryland Department of Business and Economic Development document listing "SAVER Automotive Products (Alberee Products)"); *id.*, Ex. N (official statement of Baltimore

Lee, was also at one time the president of Saver and has long been associated with Saver. (D.I. 29, Ex. A at ¶ 2; D.I. 41 at ¶¶ 5-6; D.I. 42, Ex. I)

There is no evidence that any of the Defendants (1) have any offices, employees or property in Delaware; (2) manufacture anything in Delaware; (3) had employees attend trade shows or travel to engage in business in Delaware; or (4) hold bank accounts or are registered to do business in Delaware. (*See, e.g.*, D.I. 29, Ex. A at ¶ 8; D.I. 29, Ex. B at ¶ 5; D.I. 47 at 9-10) Nor is there any evidence that any of Defendants have ever directly transacted business or sold products in Delaware.

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a case based on the court's lack of personal jurisdiction over that party. Determining the existence of personal jurisdiction requires a two-part analysis – one statutory and one constitutional.[5] First, the court analyzes the long-arm statute of the state in which the court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the court must determine whether exercising jurisdiction over the defendant in this state comports with the Due Process Clause of the Constitution. *See id.* Due Process is satisfied if the court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of

County, Maryland regarding bond issuance referencing "Alberee Products (Saver Automotive Products)" (emphasis omitted)); *id.*, Ex. O (AAIA membership directory listing "Saver Automotive Products, Inc. Alberee Products"))

[5]With regard to the statutory inquiry, the court applies the law of the state in which the district court is located; as to the constitutional inquiry, in a patent case the court applies the law of the Federal Circuit. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).

5

the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction. *See Power Integrations, Inc. v. BCD Semiconductor*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). If no evidentiary hearing has been held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). A court is always free to revisit the issue of personal jurisdiction if it later is revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

## DISCUSSION

### I. The Delaware Long-Arm Statute

The Delaware long-arm statute, in relevant part, states that:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State; . . .

6

> (4) Causes tortious injury in the State or outside of
> the State by an act or omission outside the State if
> the person regularly does or solicits business,
> engages in any other persistent course of conduct in
> the State or derives substantial revenue from
> services, or things used or consumed in the
> State . . . .

10 Del. C. § 3104. Bosch does not allege that jurisdiction exists under any one prong of

Delaware's long-arm statute. Instead, Bosch asserts that personal jurisdiction exists under a

"dual jurisdiction" or "stream of commerce" theory that implicates two portions of the long-arm

statute: subsection (c)(1) and (c)(4).[6] Whether the Delaware long-arm statute indeed

encompasses a steam-of-commerce theory for personal jurisdiction is a question that this Court

has struggled to answer.

The Delaware long-arm statute "has been broadly construed to confer jurisdiction to the

maximum extent possible under the due process clause." *LaNuova D & B, S.p.A. v. Bowe Co.*,

513 A.2d 764, 768 (Del. 1986). In *LaNuova*, the Delaware Supreme Court noted, in a footnote,

that:

> It is conceivable that a tort claim could enjoy a dual jurisdictional
> basis under (c)(1) and (c)(4) if the indicia of activity set forth under
> (c)(4) were sufficiently extensive to reach the transactional level of
> (c)(1) and there was a nexus between the tort claim and transaction
> of business or performance of work.

---

[6]Subsection (c)(1) confers "specific" jurisdiction over a non-resident defendant;
subsection (c)(4) confers "general" jurisdiction. *See, e.g., LaNuova D & B, S.p.A. v. Bowe Co.*,
513 A.2d 764, 768 (Del. 1986); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. 1997),
*aff'd*, 707 A.2d 765 (Del. 1998). "Specific jurisdiction refers to the situation in which the cause
of action arises out of or relates to the defendant's contacts with the forum. . . . It contrasts with
general jurisdiction, in which the defendant's contacts have no necessary relationship to the cause
of action." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 n.10 (Fed. Cir.
1994) (internal citations and quotation marks omitted); *see also Boone*, 724 A.2d at 1155.

7

*Id.* at 768 n.3. Subsequently, Delaware Superior Court cases have held that this footnote stands for the proposition that "when a [defendant] has sufficient general contacts with Delaware and the plaintiffs' claims arise out of those contacts," even if no subsection of the long-arm statute is fully satisfied, "jurisdiction is appropriate under [partial satisfaction of] § 3104(c)(1) and (c)(4)." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1157 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998); *see also Wright v. Am. Home Products Corp.*, 768 A.2d 518, 530-31 (Del. Super. 2000). In applying this theory, "one must take great care not to overemphasize §§ 3104(c)(1) or (c)(4)." *Boone*, 724 A.2d at 1158. The "indicia of activity under § 3104(c)(4)" need not "rise to the level of 'general presence' as usually required." *Id.* Similarly, "when analyzing § 3104(c)(1) it is not important that the manufacturer itself act in Delaware." *Id.* Instead, if a defendant exhibits "an intent or purpose . . . to serve the Delaware market with its product," and "if the intent or purpose . . . results in the introduction of the product to this State and plaintiff's cause of action arises from injuries caused by that product," then the long-arm statute is satisfied. *Id.* This approach, according to *Boone*, "best encompasses all of the intricacies of the stream of commerce theory." *Id.* at 1157-58; *see also Wright*, 768 A.2d at 530-31.

In applying *LaNuova, Boone,* and *Wright*, this Court has held that "[t]he dual jurisdiction concept arises from at least partial satisfaction of subsections (1) and (4) of the Delaware long-arm statute . . . . Dual jurisdiction may be established when a manufacturer has sufficient general contacts with Delaware and the plaintiffs' claims arise out of those contacts." *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267 (D. Del. 2010) (internal quotations omitted). Under this approach, jurisdiction exists when a defendant displays "an intent to serve the Delaware market" and "this intent results in the introduction of [a] product into the market and . . . plaintiff's cause

8

of action arises from injuries caused by that product." *Id.* at 267-68; *see also W.L. Gore & Assocs., Inc. v. Label Technologies, Inc.*, 2009 WL 1372106, at \*3 (D. Del. May 15, 2009) ("Delaware courts have held that personal jurisdiction is proper under the Delaware long-arm statute under a stream of commerce theory resulting from only 'partial satisfaction' of §§ 3104(c)(1) and (c)(4)."); *Power Integrations*, 547 F. Supp. 2d at 371.

In at least one recent decision, another Judge in this District reached a contrary conclusion, predicting that the Delaware Supreme Court would not embrace the "dual jurisdiction" theory. *See Round Rock Research LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969 (D. Del. 2013). In *Round Rock*, the Court suggested that the *LaNuova* footnote stands for the unremarkable proposition that:

> the (c)(1) and (c)(4) subsections involve overlapping concepts, and there thus might be times when the set of facts that establishes general jurisdiction under (c)(4) also establishes specific jurisdiction under (c)(1), and thus the jurisdiction would be "dual." Perhaps an interesting observation, but one meaningless for development of the law, and hence properly relegated to a footnote.

*Id.* at 976. *Round Rock* further explained that although the Delaware Superior Court has adopted the dual jurisdiction theory, in doing so

> the Superior Court was consistent with one principle of the Supreme Court (the long arm statute should reach non-residents to the maximum extent possible) but was inconsistent with two other principles (the long arm statute should be separately analyzed from due process considerations, and its interpretation should flow from the statutory language).

*Id.* Accordingly, *Round Rock* held that it could not "agree, or predict, that the Delaware Supreme Court would recognize 'dual jurisdiction.'" *Id.* at 977; *see also Liqui-Box Corp. v. Scholle Corp.*, 2013 WL 3070872 (D. Del. June 17, 2013) (internal quotation marks omitted) ("[T]he

9

constitutionally-accepted stream of commerce theory [of personal jurisdiction] does not fit neatly into any section of § 3104.").

In light of the differing views on this issue, the Court must first address whether it will continue to apply the dual jurisdiction theory of personal jurisdiction under the Delaware long-arm statute. Because the Delaware Supreme Court has not expressly decided the issue, the Court's role here is limited to "predict[ing] how that tribunal would rule" on this issue of state law. *In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014). "In doing so, we give due deference to the decisions of" the Delaware Superior Court, although they are not controlling. *Id.*; *see also Round Rock*, 967 F. Supp. 2d at 977 (agreeing that "the conclusion to be drawn from the Superior Court cases" is that dual jurisdiction is consistent with Delaware long-arm statute, but adding that this Court is "not bound to follow those cases" and merely gives them "some weight").[7]

The Delaware Supreme Court has had several opportunities to reject the dual jurisdiction theory but has refrained from doing so. *See Boone*, 724 A.2d at 1156, *aff'd*, 707 A.2d 765 (Del. 1998); *Wright*, 768 A.2d at 531 ("In sum, the Court finds that §§ 3401(c)(1) and (c)(4) provide a basis for jurisdiction over the French defendants."), *appeal denied*, 755 A.2d 389 (Del. 2000). Indeed, no Delaware state court has rejected the dual jurisdiction theory. *See LaNuova*, 513 A.2d at 768 n.3; *Boone*, 724 A.2d at 1156-58; *Wright*, 768 A.2d at 518-31; *Crane v. Home Depot, Inc.*, 2008 WL 2231472, at \*4 (Del. Super. May 30, 2008) ("[T]his Court may exercise personal jurisdiction through the stream of commerce theory.").

---

[7]Delaware does not have an intermediate appellate court. Decisions of Delaware's trial courts – Superior, Chancery, and Family Court – are subject to appellate review only by the Delaware Supreme Court. *See generally* Del. Code Ann. tit. 10, §§ 141-50, 341-51, 541-46, 921-29.

10

Moreover, it is uncontested that "Delaware's long arm statute . . . is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Hercules Inc. v. Leu Trust & Banking (Bah.) Ltd.*, 611 A.2d 476, 480-81 (1992). Consistent with the Due Process Clause, a party may be subject to personal jurisdiction when that party does "something more than simply placing a product into the stream of commerce." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (internal quotation marks omitted); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) ("The substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.").

Given this record, and particularly the fact that no Delaware state court has rejected the assertion of personal jurisdiction under the dual jurisdiction theory, the Court concludes that the Delaware Supreme Court, if faced with the issue, would hold that the "stream-of-commerce" theory does provide a basis for personal jurisdiction under Delaware law, even though the theory is not expressly authorized by Delaware's long-arm statute. The Court reaches this conclusion notwithstanding the contrary, and not unreasonable, prediction of a fellow Judge of this Court.

The Court must next determine whether the Defendants are subject to jurisdiction under the theory of "dual jurisdiction." "[T]he dual jurisdiction analysis requires a showing of both: (1) an intent to serve the Delaware market; and (2) that this intent results in the introduction of the product into the market and that plaintiff's cause of action arises from injuries caused by that product." *Belden Techs., Inc.*, 829 F. Supp. 2d at 267-68.

11

"A non-resident firm's intent to serve the United States market is sufficient to establish

an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude

from its marketing and distribution efforts some portion of the country that includes Delaware."

*Power Integrations*, 547 F. Supp. 2d at 373; *see also Belden Techs., Inc.*, 829 F. Supp. 2d at 268

(finding that intent existed where (1) Delaware was not specifically targeted, (2) foreign party

made at least four sales to Delaware customers, and (3) there was no indication that non-resident

parties directed sales to Delaware customers to cease; "[t]hat [the non-resident defendant] did not

specifically target Delaware is of no moment under these circumstances") (citing *Boone*, 724

A.2d at 1161).

Here, it is not alleged that any Defendant itself directly "[t]ransacts any business or

performs any character of work or service in the State" (pursuant to the meaning of subsection

(c)(1)). *See, e.g., Power Integrations*, 547 F. Supp. 2d at 371; *see also Boone*, 724 A.2d at 1156

("When a manufacturer passes title to goods to a third party outside of Delaware it is not deemed

to have performed an act in this State."). Nor is it alleged that general jurisdiction exists as to

any Defendant (pursuant to subsection (c)(4)), as there is no allegation that Defendants

themselves have done or solicited business or taken another persistent course of conduct in

Delaware, nor that there is sufficient evidence that Defendants generate "substantial revenue"

from services, or things used or consumed, in the State). *See Power Integrations*, 547 F. Supp.

2d at 371, 374. Instead, the question is whether any or all of Defendants' actions in placing

wiper blades or wiper blade components into the stream of commerce – where those wiper blades

and/or wiper blade components end up allegedly causing injury in Delaware (through the sale of

the Goodyear Assurance product at Costco) – are sufficient to satisfy the dual jurisdiction theory.

12

## II.    Due Process

If the Court determines that it has jurisdiction under Delaware's long-arm statute, the

Court must next determine if "subjecting the nonresident defendant to jurisdiction in Delaware

violates the Due Process Clause of the Fourteenth Amendment." *Hercules v. Leu Trust &*

*Banking (Bah.) Ltd.*, 611 A.2d 476, 481 (1992). A defendant is subject to the jurisdiction of a

federal court only when the defendant's conduct and connections with the forum state are such

that it should "reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp.*

*v. Woodson*, 444 U.S. 286, 297 (1980), such that exercising personal jurisdiction would not

offend "traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945).

In *Asahi*, 480 U.S. at 105, the Supreme Court split into two camps regarding the question

of whether "mere awareness on the part of a foreign defendant that the components it

manufactured, sold, and delivered outside the United States would reach the forum State in the

stream of commerce constitutes 'minimum contacts' between the defendant and the forum State"

such that the requirements of constitutional due process were satisfied. Justice Brennan, writing

for four justices, took the view that "jurisdiction premised on the placement of a product into the

stream of commerce is consistent with the Due Process Clause;" for, "[a]s long as a participant in

this process is aware that the final product is being marketed in the forum State, the possibility of

a lawsuit there cannot come as a surprise." *Id.* at 117 (plurality opinion). Justice O'Connor, also

writing for four justices, rejected Justice Brennan's approach and concluded instead:

> The "substantial connection" between the defendant and the forum
> State necessary for a finding of minimum contacts must come
> about by an action of the defendant purposefully directed toward

> the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.

*Id.* at 112 (plurality opinion) (internal citation omitted).

In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566-67 (Fed. Cir. 1994), the Federal Circuit found it was unnecessary to decide whether Justice O'Connor's or Justice Brennan's approach to the stream-of-commerce theory was the correct one. There, the Court found sufficient contacts with the forum state to support the exercise of personal jurisdiction under either articulation of the stream-of-commerce theory, as the defendants were alleged to have "made ongoing and continuous shipments of the accused infringing product into [the state] and maintained an established distribution network that encompassed [the state]." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363-64 (Fed. Cir. 2012) (citing *Beverly Hills Fan*, 21 F.3d at 1561, 1563, 1565).

More recently, in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), the Supreme Court revisited the split of opinion but did not resolve it. Accordingly, the Federal Circuit's decision in *Beverly Hills Fan*, 21 F.3d at 1558 – which was handed down after *Asahi* and before *McIntyre* – controls. *See also AFTG-TG*, 689 F.3d at 1363-64 ("Because we must proceed on the premise that *McIntyre* did not change the Supreme Court's jurisdictional framework, we must apply our precedent that interprets the Supreme Court's existing stream-of-commerce precedents. That precedent is *Beverly Hills Fan* . . . .").[8]

---

[8]Defendant argues that *McIntyre*, 131 S. Ct. at 2780, overrules *Power Integrations* and changes the analysis under the long-arm statute. "[A]t this stage, the impact of [*McIntyre*], if any, on the long-standing and well-established Delaware jurisprudence relating to stream-of-commerce theory is unclear." *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 6004079, at *18 (D. Del. Nov. 4, 2011); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689

14

In its decisions, the Federal Circuit has emphasized the general proposition "that a court should not decide a legal issue when doing so is unnecessary to resolve the case at hand." *AFTG-TG, LLC*, 689 F.3d at 1364. In particular, "[i]f [the Defendant] is able to satisfy Justice O'Connor's test, there [is] no need to address whether the less restrictive test proposed by Justice Brennan should be the standard under Delaware law and under the due process clause." *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1324 (Fed. Cir. 2005). Here, if the Court finds that Defendants satisfy the O'Connor test, the Court need not engage in any further discussion of the differences between the O'Connor and Brennan tests.

The O'Connor test is satisfied when a party engages in "[a]dditional conduct . . . [to] indicate an intent or purpose to serve the market in the forum State, [such as] . . . advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112. Here, as in *Beverly Hills Fan*, 21 F.3d at 1565, "[t]he allegations are that defendants purposefully shipped the accused [product] into [Delaware] through an established distribution channel [and] [t]he cause of action for patent infringement is alleged to arise out of these activities."

## III. Analysis

The Court will analyze whether Bosch has established personal jurisdiction based on a stream-of-commerce theory by exploring the record as to each Defendant in turn.

F.3d 1358, 1363 (Fed. Cir. 2012) ("The narrowest holding is that which can be distilled from Justice Breyer's concurrence – that the law remains the same after *McIntyre*."). Therefore, the undersigned Judge will continue to follow *Power Integrations*.

## A.    Saver

It is undisputed that Saver, a Maryland company, sells the accused Goodyear Assurance wiper blades to U.S. retailers, including the nationwide chain Costco. (D.I. 29 Ex. A at ¶¶ 3, 7) Costco has a location in Newark, Delaware that sells the accused blade. (D.I. 40 at ¶¶ 3, 5, Exs. B, D) Saver, by its own admission, is a "large supplier of wiper blades in the United States." (D.I. 42 Ex. H) Under Delaware's long-arm statute, a party presumptively intends to target Delaware when it targets the United States market and does not intend to exclude Delaware. *See Power Integrations,* 547 F. Supp. 2d at 373. Because Saver, a "large supplier of wiper blades in the United States," sells the accused product to the nationwide reseller Costco with the expectation that Costco will sell the accused product in all parts of the United States, including Delaware, Saver presumptively intends to target the Delaware market. It is undisputed that this intent to target the United States market has "result[ed] in the introduction of the [accused] product to this State" (*see* D.I. 40 ¶¶ 3, 5, Exs. B, D), "and plaintiff's cause of action [i.e., patent infringement] arises from injuries caused by that product," *Power Integrations*, 547 F. Supp. 2d at 372. Therefore, the statutory prong of the personal jurisdiction analysis is satisfied.

A finding of personal jurisdiction over Saver also comports with the Due Process prong of the personal jurisdiction inquiry. Saver has "purposefully avail[ed] itself of the privilege of conducting activities within [Delaware], thus invoking the benefits and protections of its laws." *See McIntyre*, 131 S. Ct. at 2785. Considering that Saver, by selling to Costco retail stores, targeted the Delaware market and sought to sell its accused product in this State, there is nothing patently unfair or unreasonable about subjecting Saver to this Court's jurisdiction. Moreover, Saver, a Maryland company, is headquartered less than 80 miles from the federal courthouse in

16

Wilmington, Delaware. In short, Saver "could foresee being haled into court" in Delaware. *Asahi*, 480 U.S. at 109. Accordingly, the Court finds that it has jurisdiction over Defendant Saver.[9]

## B. Alberee

Plaintiffs assert that the Court has jurisdiction over Alberee because of (1) Alberee's agency relationship with Saver and (2) Alberee's purposeful availment of the Delaware market through the dual jurisdiction/stream-of-commerce theory. (*See* D.I. 39 at 11-16) Alberee claims that it does not have an agency relationship with Saver and essentially repeats the arguments Saver makes with respect to the stream-of-commerce theory. (*See* D.I. 50 at 8-9; D.I. 29 Ex. A at ¶ 7)

Under agency theory, a defendant company may be subject to personal jurisdiction under Delaware's long-arm statute by virtue of the court's personal jurisdiction over the defendant company's affiliate. *See Intellectual Ventures I LLC v. Nikon Corp.*, 935 F. Supp. 2d 787, 793 (D. Del. 2013); *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559-60 (D. Del. 1998). The agency theory may be applied not only to parents and subsidiaries, but also to companies that are "two arms of the same business group," operate in concert with each other, and enter into agreements with each other that are nearer than arm's length. *See Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009); *see also Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F. Supp. 186, 188-89 (D. Del. 1993). Among the factors for

_____

[9]Saver argues that the Supreme Court's decision in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), holds that a defendant should not be "haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person" (internal quotation marks omitted). Assuming Saver is correct, *Burger King* is distinguishable, because it was Saver's decision – not a third party's – to target United States and Delaware consumers.

determining whether an agency relationship exists are: "[1] the extent of overlap of officers and directors, [2] methods of financing, [3] the division of responsibility for day-to-day management, and [4] the process by which each corporation obtains its business." *Eastman*, 2011 WL 6004079 (citing *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991)).

Here, with regard to the four factors, Bosch has alleged only that one individual, Albert Lee, is both the owner of Alberee and in a top management position in Saver. Without further evidence, this overlap is not dispositive. *See Telcordia Techs., Inc. v. Alcatel S.A.*, 2005 WL 1268061, at *3 (D. Del. May 27, 2005) (stating single overlap of directors is not sufficient to find agency relationship). Bosch has failed to show an agency relationship exists between Saver and Alberee.

Beyond Lee's relationship with both Alberee and Saver, Plaintiff points to evidence that both Alberee and Saver are reported as being the same company. (D.I. 49 at 6 n.5; D.I. 39 at 4-5) Plaintiff claims that as recently as 2011, Alberee and Saver described themselves as "Alberee Products, Inc. d/b/a Saver Automotive Products, Inc.,"[10] and that together they were a "large supplier of wiper blades in the United States." (D.I. 42, Ex. H) Lee acknowledges that he was aware blades were sold to Costco (D.I. 29 Ex. A at ¶ 3), and Alberee does not dispute Bosch's allegation that it was aware of the Costco agreement and that its blades are sold in Delaware. Considered as a whole, the record reflects that Alberee's intended targeting of the Delaware

---

[10]Alberee disputes this evidence; alleging that these references to "Alberee Products, Inc., d/b/a Saver Automotive Products, Inc." began in a related action in the United States International Trade Commission, with the Plaintiff erroneously captioning the complaint in that fashion. (D.I. 48 at 1)

market resulted in the introduction of the accused product into Delaware. Consistent with *Power Integrations,* 547 F. Supp. 2d at 374, this is sufficient to satisfy the statutory prong of the personal jurisdiction analysis.

Bosch has satisfied the requirements of Due Process as well. It is undisputed that Alberee has no business, manufacturing, or assembly facilities, distributors, sales, addresses, or telephone numbers in Delaware; it has never attended a trade show in Delaware or paid taxes in Delaware; and its employees have never traveled to Delaware for business. (D.I. 29 at 10-11) However, Bosch's allegations, much like those in *Beverly Hills Fan*, 21 F.3d at 1565, are that the accused wipers arrived in Delaware through Alberee's purposeful shipment of the wipers through established distribution channels, namely, Saver and Costco. (D.I. 39 at 11-12) The sale of wipers in Delaware were not isolated incidents but instead arose from those efforts to serve the state. *See World-Wide Volkswagen*, 444 U.S. at 297. The burden from litigating in Delaware is the same for Alberee as for Saver, and again the Court concludes that exercising jurisdiction in this case does not offend "fair play and substantial justice." Alberee's motion to dismiss will be denied.

## C. API

Although Bosch argues there is an agency relationship between API and Alberee or Saver (D.I. 50 at 9), Bosch does not offer any significant evidence of such relationships. Bosch's only support for its position is that (1) Albert Lee, the owner of Alberee, and Choon Bae Lee, the owner of API, jointly applied for a patent related to wiper blades in Korea and are co-inventors on a U.S. Patent (D.I. 39 at 17; D.I. 38 at ¶ 18); (2) API sells millions of components to Alberee (D.I. 39 at 17); and (3) Saver has represented itself as having manufacturing facilities in Korea

19

(D.I. 42 Ex. A). API is a Korean company with no evident relationship with Saver or Costco. (D.I. 50 at 9) Alberee takes possession of the API-manufactured components in Busan, Korea, importing them to the United States through Los Angeles, California. (D.I. 48 at 9)

Nor has Bosch met its burden to demonstrate personal jurisdiction over API under the dual jurisdiction theory. As Plaintiff contends, the fact that API supplies only components and not the final assembly does not insulate API from jurisdiction. *See LG. Phillips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp.*, 551 F. Supp. 2d 333, 339 (D. Del. 2008). However, *LG. Phillips, id.* at 338, where the defendant sold not only components to a large company (which assembled and distributed them nationally) but also owned several Delaware corporations whose purpose was to sell the defendant's products in the United States, is distinguishable. Here, API sold components to a Maryland company, which assembled and sold them to another Maryland company, which in turn sold them to a national distributor. Aside from the components appearing in Delaware as finished products, there is no evidence that API has any ties to Delaware other than this suit. Examining the limited evidence presented, it is insufficient to establish that API had the requisite intent to serve Delaware. Therefore, the Court cannot at this time find the Delaware long-arm statute is satisfied with respect to API.

Plaintiff argues in the alternative that the Court should exercise jurisdiction over API under Rule 4(k)(2). (D.I. 39 at 19; D.I. 49 at 19) Pursuant to Rule 4(k)(2), personal jurisdiction over a foreign defendant exists when: (1) the case arises under federal law and is not pending before the court pursuant to the court's diversity jurisdiction; (2) the foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction in any state; and (3) the foreign defendant has sufficient contacts with the United States as a whole to comport with

20

constitutional notions of due process. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 647 (D. Del. 2006).

Bosch has failed to show that API is not subject to jurisdiction in any state. With respect to this requirement, Bosch need not "prov[e] a negative many times over," i.e., regarding all 50 states. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1413 (Fed. Cir. 2009). Instead, the Federal Circuit has adopted the burden-shifting approach of the Seventh Circuit, which allows a district court to exercise jurisdiction under Rule 4(k)(2) if "the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible." *Id.* at 1415 (citing *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)). Further, "the defendant's burden . . . entails identifying a forum . . . where jurisdiction would have been proper at the time of filing, regardless of consent." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012).

Bosch argues that API does not identify any state where it is subject to personal jurisdiction. (D.I. 39 at 19; D.I. 49 at 19) In response, API declares it is subject to jurisdiction in Maryland. (D.I. 50 at 9) API does have a record of continuous contacts with Maryland, as API has been supplying millions of components to Alberee within the state of Maryland for at least three years. Hence, API is not just consenting to jurisdiction in Maryland, but there also appear to be sufficient minimum contacts between API and Maryland. Accordingly, this Court has no basis to exercise Rule 4(k)(2) jurisdiction over API.

Finally, Bosch requests, in the event the Court finds it cannot at this point exercise personal jurisdiction over any defendant, that it be permitted to take jurisdictional discovery. (D.I. 39 at 20) Should jurisdictional discovery be granted, Bosch intends to focus on the

21

relationship among API, Alberee, and Saver, and the distribution and sale of the accused products in Delaware and throughout the United States. (*Id.*) The Court will permit Bosch to take jurisdictional discovery with respect to API.

As a general matter, "jurisdictional discovery should be allowed unless the plaintiff's claim [of personal jurisdiction] is 'clearly frivolous.'" *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997).[11] If a plaintiff makes factual allegations that suggest the possible existence of requisite contacts between the defendant and the forum state with reasonable particularity, a court should order jurisdictional discovery. *See Power Integrations*, 547 F. Supp. 2d at 369 (citing *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005)); *see also Eurofins Pharma U.S. Holdings v. BioAlliance Pharma S.A.*, 623 F.3d 147, 157 (3d Cir. 2010) ("If the plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained.") (modification in original; internal quotation marks omitted).

Here, Bosch's jurisdictional contentions with respect to API are not clearly frivolous. Bosch has made a prima facie showing for jurisdictional discovery by detailing the supply chain from API to Delaware. These allegations at least suggest, with reasonable particularity, the possible existence of requisite contacts between API and Delaware. Allowing discovery on these issues is appropriate in this situation. *See Power Integrations*, 547 F. Supp. 2d at 376 (finding

---

[11]Third Circuit law governs whether jurisdictional discovery should be permitted. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021-22 (Fed. Cir. 2009).

jurisdictional discovery appropriate to provide evidence of intent and purpose to serve

Delaware); *Toys "R" Us*, 318 F.3d at 455-56 (discovery allowed where intentionality aspect was

the key missing component for jurisdiction). Additionally, if the relationship between API and

the other two Defendants is explored further, it may provide the "something more" to bring API

into the Court's jurisdiction. *See Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp.

2d 541, 548 (D. Del. 2012) (internal quotation marks omitted).

## CONCLUSION

An appropriate Order follows.