IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT BOSCH LLC,                )
                                 )
                 Plaintiff,      )
                                 )
        v.                       )    C.A. No. 12-574 (LPS)(CJB)
                                 )    (CONSOLIDATED)
ALBEREE PRODUCTS, INC., API KOREA )
CO., LTD., SAVER AUTOMOTIVE PROD- )   **REDACTED PUBLIC VERSION**
UCTS, INC., and COSTCO WHOLESALE )        **FILED 5/1/2015**
CORPORATION,                     )
                                 )
                 Defendants.     )


**OPENING BRIEF IN SUPPORT OF COSTCO'S MOTION FOR
SUMMARY JUDGMENT AS TO THE GOODYEAR HYBRID
WIPER PRODUCT AND REGARDING CLAIM CONSTRUCTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Thomas Curry (#5877)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
tcurry@mnat.com
  *Attorneys for Costco Wholesale Corporation*

OF COUNSEL:

James W. Dabney
Diane E. Lifton
Walter M. Egbert, III
Richard M. Koehl
Stephen Kenny
Greta A. Fails
Erik Huestis
Stefanie Lopatkin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

April 24, 2015

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 1

SUMMARY OF THE ARGUMENT ........................................................................................ 3

STATEMENT OF FACTS ......................................................................................................... 5

ARGUMENT ............................................................................................................................ 10

    I.     SAC COUNT SIX ('926 PATENT) SHOULD BE DISMISSED AS TO THE GOODYEAR HYBRID PRODUCT. ............................................... 13

    II.    SAC COUNTS THREE ('607 PATENT) AND EIGHTEEN ('096 PATENT) SHOULD BE DISMISSED AS TO THE GOODYEAR HYBRID PRODUCT .......................................................................................... 18

        A.    Bosch's Rights in the '607 and '096 Patents are Exhausted as to Original Equipment Wiper Systems in Various ████████ ████████ █████ Vehicles That Were Sold in the United States With Bosch's Authorization. ............................... 18

        B.    The Goodyear Hybrid Product Lacks Features That the '607 and '096 Patents Describe as Elements of the Claimed Invention. ........................................................................................ 22

    III.   SAC COUNT EIGHT ('698 PATENT) SHOULD BE DISMISSED AS TO THE GOODYEAR HYBRID PRODUCT. ......................... 25

    IV.   THE SAC DOES NOT ASSERT THE '988 PATENT AGAINST THE GOODYEAR HYBRID PRODUCT AND THE COURT SHOULD DENY BOSCH'S BELATED AND FUTILE ATTEMPT TO RAISE SUCH A CLAIM AT THIS LATE STAGE. ................................................................................................... 25

    V.   SUBJECT MATTER THAT SELECTED PATENT CLAIM WORDS AND PHRASES MAY DESCRIBE OR DENOTE. ............................. 29

        A.    "Means for Securing" in the '607 Patent ................................... 30

        B.    "Securing Means (60)" in the '607 Patent ................................. 31

        C.    "Coupling Part (20)" in the '988 Patent ...................................... 31

D. "Means for Maintaining the Clearance" in the '419 Patent......................32

E. "Spherically Curved Window" in the '698 Patent.....................................33

F. "Support Means (58, 144)" in the '588, '264, and '823
Patents........................................................................................................33

G. "Covering Cap (16)" in the '096 Patent......................................................34

H. Bosch's Proposed Verbal Abstractions......................................................34

CONCLUSION....................................................................................................................35

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  134 S. Ct. 2347 (2014) ................................................................................................ 12

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
  365 U.S. 336 (1961) .......................................................................................... *passim*

*Bowman v. Monsanto Co.,*
  133 S. Ct. 1761 (2013) ......................................................................................... 19-20

*Eibel Process Co. v. Minnesota & Ontario Paper Co.,*
  261 U.S. 45 (1923) ............................................................................................... 10, 25

*Everpure, Inc. v. Cuno,*
  875 F.2d 300 (Fed. Cir. 1989) ........................................................................................ 21

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
  535 U.S. 722 (2002) ............................................................................... 4, 11, 16, 30

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,*
  336 U.S. 271 (1949) ....................................................................................................... 11

*Husky Injection Molding Sys. Ltd. v. R & D Tool & Eng'g Co.,*
  291 F.3d 780 (Fed. Cir. 2002) ....................................................................................... 21

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC,*
  445 F.3d 1348 (Fed. Cir. 2006) ................................................................................ 4, 29

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
  481 F.3d 1371 (Fed. Cir. 2007) ..................................................................................... 34

*Limelight Networks, Inc. v. Akamai Techs., Inc.,*
  134 S. Ct. 2111 (2014) ................................................................................................... 19

*Markman v. Westview Instruments, Inc.,*
  517 U.S. 370 (1996) ................................................................................................ 11-12

*Porter v. Farmers Supply Serv., Inc.,*
  790 F.2d 882 (Fed. Cir. 1986) ....................................................................................... 21

*Retractable Techs., Inc. v. Becton, Dickinson & Co.,*
  653 F.3d 1296 (Fed. Cir. 2011) ..................................................................................... 12

*Robert Bosch LLC v. Trico Prods. Corp.*,
   No. 12 CV 437 (N.D. Ill. Sept. 14, 2012), D.I. 62 ..................................................... 13-14, 28

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   135 S. Ct. 831 (2015) .......................................................................................................4, 30

*Union Paper-Bag Machine Co. v. Murphy*,
   97 U.S. 120 (1877) ............................................................................................................11

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) .......................................................................................................10, 14

*Westinghouse Electric & Mfg. Co. v. Formica Insulation Co.*,
   266 U.S. 342 (1924) ..........................................................................................................10

*Winans v. Denmead*,
   56 U.S. (15 How.) 330 (1853) ...........................................................................................12

## Rules and Statutes

35 U.S.C. § 112(a) .......................................................................................................4, 30

35 U.S.C. § 154(a)(1) (2012) ...............................................................................................11

35 U.S.C. §§ 271(b) and (c) ..................................................................................................18

35 U.S.C. § 271(a) ................................................................................................... *passim*

Fed. R. Civ. P. 37(c)(1) .......................................................................................................25

Fed. R. Civ. P. 30(b)(6) .......................................................................................................20

## **NATURE AND STAGE OF THE PROCEEDINGS**

This is an action for alleged patent infringement. The Second Amended Complaint of plaintiff Robert Bosch LLC ("Bosch"), filed October 31, 2014 (the "SAC"; D.I. 95), asserts eighteen "Counts" of infringement, but the Goodyear "Hybrid" product is accused in just four of them, namely, Counts Three, Six, Eight, and Eighteen. The time for amending that pleading set by the Scheduling Order in this nearly three-year-old case lapsed on March 20, 2015.

On October 31, 2014, Bosch served initial infringement contentions. As to the Goodyear Hybrid product, Bosch asserts claims of the four patents of the asserted Counts: (i) two claims of U.S. Patent No. 6,826,926 (the "'926 patent) of Count Six; (ii) three claims of U.S. Patent No. 6,553,607 (the "'607 patent") of Count Three; (iii) eight claims of U.S. Patent No. 8,272,096 (the "'096 Patent") of Count Eighteen; and (iv) one claim of U.S. Patent No. 6,973,698 (the "'698 patent") of Count Eight.

On December 9, 2014, Bosch served supplemental initial infringement contentions. Bosch dropped its contention that the '698 patent reached the Goodyear Hybrid product, thus leaving only three patents asserted against that product and only one claim for direct infringement (the '926 of Count Six) as to that product.

On December 23, 2014, Costco moved to dismiss the SAC as to its asserted claims for pre-notice damages or pre-notice indirect infringement. That motion is fully briefed and set for oral argument on June 8, 2015, concurrently with the argument of the present motion.

On March 6, 2015, Bosch served its preliminary election of claims under paragraph 21.a of the Scheduling Order (which required an election of no more than 56 claims in total). As to the Goodyear Hybrid product, Bosch maintained its previous contentions as to the '607 and '926 patents but dropped three claims of the '096 patent.

On March 18, 2015, the parties exchanged lists of claim words and phrases that might (or

might not) require construction by the Court. On March 19, 2015, Costco advised Bosch that it intended to seek summary judgment dismissing the SAC insofar as it alleged that sale or use of the Goodyear Hybrid product constituted patent infringement. The following day, March 20, 2015, Bosch served a paper styled "Second Supplemental Initial Infringement Contentions."

Bosch's Second Supplemental Initial Infringement Contentions purported to increase the number of asserted claims from 56 to 106, contrary to paragraph 21.a of the Scheduling Order. Additionally, those contentions asserted for the first time that U.S. Patent No. 6,611,988 (the "'988 patent") is purportedly infringed by use or sale of the Goodyear Hybrid product, although no such claim is pleaded in the existing SAC (*see* D.I. 95 Count Four).

By letter dated April 1, 2015 (D.I. 141), Costco, joined by its co-defendants, sought leave to file an early motion for summary judgment dismissing the SAC insofar as it alleges that use or sale of the Goodyear Hybrid product constitutes patent infringement. Costco proposed moving for summary judgment as an alternative to asking the Court to construe patent claim words in the abstract. On April 7, 2015 (D.I. 147), the Court granted leave to move for summary judgment concurrently with the briefing of certain claim construction issues.

This is Costco's opening brief in support of its motion for summary judgment and regarding claim construction. Insofar as the Goodyear Hybrid product lacks structural elements that asserted claim words describe, any claim construction aspects of those points are briefed in the context of the non-infringement discussion.[1] To the extent that the Court elects to declare what certain patent claim words or phrases denote or describe, outside the context of a merits issue whose resolution requires such a declaration, Costco separately sets forth its views on what

---

[1]   Costco respectfully submits that twenty (20) pages of this brief should be counted toward claim construction issues and any excess counted against the pages that the Court has allowed the parties for summary judgment briefing.

disclosed subject matter asserted claim terms are rightly understood as describing or denoting.

## SUMMARY OF THE ARGUMENT

1.      SAC Count Six, which asserts the '926 patent, should be dismissed as to the Goodyear Hybrid product, at least because that product lacks the claimed "at least one support element (12), a wiper strip (14), and a connecting device (16) for a wiper arm (18), wherein the support element (12) is an elongated, flat bar to which the wiper strip (14) and the connecting device are attached." The Goodyear Hybrid product lacks any structure identical or equivalent to the claimed "support element (12)." The metal wiper strip stiffener in the Goodyear Hybrid product cannot constitute the claimed "support element (12)" for at least the reason that that stiffener is not "attached" to the product's wiper arm connector. Part I, *infra*.

2.      SAC Counts Three and Eighteen, asserting the '607 patent and the '096 patent, respectively, should be dismissed as to the Goodyear Hybrid product, at least because (i) the subject matter claimed in those patents includes wiper arm structures that form no part of the Goodyear Hybrid product, and (ii) the '607 and '096 patents grant Bosch no right to exclude use or repair of original equipment ("OE") wiper systems that were sold or re-sold in the United States with Bosch's authorization. *See, e.g.*, *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961) (replacement of worn-out convertible top material did not infringe patents claiming convertible top assembly). Bosch has not identified so much as a single year or model of ███████████████████████████████████████████ or other brand of vehicle whose use or repair by Costco customers could even theoretically infringe the '607 or '096 patents. Part II, *infra*.

3.      SAC Count Eight, asserting the '698 patent, should be dismissed as to the Goodyear Hybrid product, because Bosch has abandoned that claim. Part III, *infra*.

4.      SAC Court Four, asserting the '988 patent, does not allege that use or sale of the

Goodyear Hybrid product infringes that patent. The time for amending the pleadings passed on March 20, 2015, without Bosch seeking leave to amend. In any event, Bosch's back-door attempt to amend SAC Count Four should be rejected as futile. The Goodyear Hybrid product lacks the claimed "band-shaped-elongated, spring-elastic support element (12)" and also lacks the claimed "coupling part (20)." The wiper arm connector in the Goodyear Hybrid product cannot constitute the claimed "coupling part (20)," at least because it is not "seated on another band face (18) of the support element." Part IV, *infra*.

5.      Except as necessary to determine these non-infringement questions, Costco submits that the Court need not and should not undertake to declare what patent claim words might mean or denote in the abstract, an exercise that often "takes on the attributes of something akin to an advisory opinion." *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350 (Fed. Cir. 2006). Without a particular accused structure in view, the Court cannot determine whether Bosch may be barred from seeking to exclude use of "the particular equivalent in question." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co*., 535 U.S. 722, 740 (2002). Moreover, fact-bound disputes about patent claim scope now require trials, not summary proceedings. *See Teva Pharms. USA, Inc. v. Sandoz, Inc*., 135 S. Ct. 831, 840–42 (2015).

Nevertheless, should the Court find it appropriate to declare what certain patent claim words or phrases might mean or denote outside the context of a merits issue whose resolution turns on whether particular subject matter is included or excluded, in Part V *infra*, Costco addresses what appears to be the support for certain patent claim terms in the "written description of the invention" (35 U.S.C. § 112(a)) contained in the specifications of the asserted patents. Insofar as Bosch contends that asserted patent claim words or phrases encompass more

than equivalents of corresponding structures disclosed in the specifications and drawings of the patents, such patents should be declared void.

## STATEMENT OF FACTS

In the years following World War II, new vehicles started to come equipped with curved windshields and, relatedly, windshield wiper assemblies having the general arrangement of parts depicted in U.S. Patent No. 3,418, 679 to Barth ("Barth"; Appendix ["A-"] 44):



The above figure shows a first support bracket (2), two outer support brackets (5, 6), four claws (7), two stiffeners (20), and a rubber wiper (1). The '926 patent characterizes the support system depicted above as "the costly support bracket design." A-222 at col. 1:22–23.

The prior art to the '926 patent also includes wiper assemblies in which a pre-curved spring replaces the multiple support brackets, stiffeners, claws, and couplers often found in wiper assemblies. One such prior art wiper assembly ("Swanepoel"; A-84) is depicted below:



The above figure shows a pre-curved spring (12) to which a wiper arm connector (16)

and a rubber wiper strip (14) are both attached. There are no support brackets, bracket pivot couplers, claws, or stiffeners positioned in the rubber wiper strip.

The prior art to the '926 patent also included "hybrid" wiper assemblies like the one below in U.S. Patent No. 6,000,093 to Charng (A-89):



The above figures show (i) a first support bracket (2); (ii) two outer support brackets (3, 4); (iii) six claws (not numbered); (iv) a rubber wiper strip (14); (v) a stiffener (15); and (vi) a wiper arm connector (23, 24, 25). As in the Barth assembly depicted above, the Charng outer support brackets (3) are free to pivot independently of one another.

The '926 patent discloses a wiper assembly that purports to improve upon the Swanepoel assembly depicted above. Figures 1 and 4 of the '926 patent (A-216, A-218) are reproduced below:



The above figures depict a pre-curved flat spring (12) to which a wiper arm connector (16) and a rubber wiper strip (14) are both attached. There are no support brackets, bracket pivot couplers, claws, or stiffeners positioned in the rubber wiper strip. The support element (12) has a

- 6 -

width (b) and thickness (d) as shown in Figure 4. The width (b) is defined by reference to a z-axis, which is the sweep direction and generally parallel to the windshield. The depth (d) is defined by reference to a y-axis, which is generally perpendicular to the windshield.

In explaining the purported novelty of the wiper assembly depicted above, the '926 patent stated in column 1 (A-222 at col. 1:7–24; emphasis added):

> In wiper blades of the present invention, the support element should assure a predetermined distribution of the wiper blade pressing force—often also called pressure—applied by the wiper arm against the window, over the entire wiping zone that the wiper blade sweeps across. Through an appropriate curvature of the unstressed support element—i.e. when the wiper blade is not resting against the window—the ends of the wiper strip, which is placed completely against the window during the operation of the wiper blade, are loaded in the direction of the window by the support element, which is then under stress, even when the curvature radii of spherically curved vehicle windows change in every wiper blade position. The curvature of the wiper blade must therefore be slightly sharper than the sharpest curvature measured in the wiping zone of the window to be wiped. *The support element thus replaces the costly support bracket design that has two spring strips disposed in the wiper strip, which is the kind used in conventional wiper blades* (DE-OS 15 05 357).

The citation "DE-OS 115 05 357," above, denotes the German counterpart to U.S. Patent No. 3,418,697 to Barth ("Barth"), Figure 1 of which is reproduced on page 5, above. The '926 patent specification proceeds then to describe three prior art flat spring wiper blade assemblies and characterizes each of them as being of the same "type" as the "[t]he invention." A-222 at col. 1:26–28, 33–34, 52–53 ("EP 0 594 451 describes flat bar wiper blades with a varying profile").

The '926 patent then goes on to propose, as a purported improvement upon the *tapered* spring support disclosed in Swanepoel, a *substantially rectangular* spring support whose width and thickness are such that the deflection angle gamma, illustrated below, does not exceed .009 radians (claim 1) or .005 radians (claim 2) when the structure is pulled or pushed by a wiper arm in a direction parallel to the windshield, an axis denoted "Z" in the figure below:



*Fig.7*

Claim 1 of the '926 patent reads (A-226; emphasis added):

**1**. A wiper blade for windows, comprising: at least one support element **(12),** a wiper strip **(14),** and a connecting device **(16)** for a wiper arm **(18),** wherein the support element **(12)** is *an elongated, flat bar to which the wiper strip **(14)** and the connecting device **(16)** are attached,* wherein the support element **(12)** has a cross sectional profile in which

$$\frac{F_{wf} * L^2}{48 * E * I_{zz}} < 0.009,$$

where $F_{wf}$ is an actual contact force exerted on the wiper blade by the wiper arm **(18)** in condition when it is pressed against a window, L is a length of the support element **(12),** E is an elasticity modulus of the support element **(12),** and $I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an [s-]axis, which adapts along with the support element **(12),** and perpendicular to a y-axis, wherein the support element **(12)** has a substantially rectangular cross sectional profile **(40),** with a substantially constant width b and a substantially constant thickness d.

As explained more fully in Part I *infra*, the above-quoted claim plainly excludes the accused Goodyear Hybrid product from its scope. Reproduced below is an image from Bosch's letter to the Court dated April 2, 2015 (D.I. 145) which Bosch labeled, "Exploded view of Costco's accused Goodyear Hybrid blade":



The above image shows, from top to bottom, (i) one part of a two-part wiper arm

connector, (ii) an articulated, three-part superstructure having an irregularly shaped opening for receiving the wiper connector, a central support bracket, two outer support brackets, and four claws as shown in the exploded image below; (iii) a first wiper strip stiffener made of metal; (vi) a second wiper strip stiffener made of plastic (inside of which the metal stiffener slides and fits loosely); and (vi) a rubber wiper strip. A-651–60 (Declaration of Daniel H. Kruger ¶¶ 2, 13–14 & Exs. 1–2).



The central and outer support brackets of the Goodyear Hybrid product, depicted above, plainly do not form "an elongated, flat bar" having a "substantially rectangular" cross sectional profile. Evidently recognizing this, Bosch's April 2 letter to the Court pointed to the metal *stiffener* in the Goodyear Hybrid product (third from the bottom, above) as supposedly being identical or equivalent to the claimed "support element (12)." But this proposed word game avails Bosch nothing; for the asserted claims require "an elongated, flat bar *to which the wiper strip (14) and the connecting device (16) are attached*." As clearly shown above, the structure that Bosch now fancifully characterizes as identical or equivalent to the claimed "support element (12)" *does not even touch* and plainly is not "attached" to the wiper arm connecting device in the Goodyear Hybrid product (structure at top).

Whatever may be the merits of a pre-curved, substantially rectangular spring support whose deflection angle under load in the sweep or z-axis direction can be calculated using a mathematical formula, the Goodyear Hybrid simply does not incorporate any such support. And

as for the load balancing brackets that do form the Goodyear Hybrid wiper support structure, the '926 patent does not disclose any such structure and the formula in the asserted claims does not even purport to define lateral deflection angle of such a structure under load.

## ARGUMENT

Section 271(a) of the United States Code provides: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any *patented invention*, within the United States or imports into the United States any *patented invention* during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (2012) (emphasis added).

"§ 271(a) of the new Patent Code, which defines 'infringement,' left intact the entire body of case law on direct infringement." *Aro*, 365 U.S. at 342; *accord Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 26 (1997) ("In the context of infringement, we have already held that pre-1952 precedent survived the passage of the 1952 Act.").

In *Eibel Process Co. v. Minnesota & Ontario Paper Co*., 261 U.S. 45, 63 (1923), the Supreme Court provided a comprehensive restatement of how federal courts are to go about analyzing whether a patent is, or is not, infringed by use of an accused product or process:

> In administering the patent law, the court first looks into the art, to find what the real merit of the alleged discovery or invention is, and whether it has advanced the art substantially. If it has done so, then the court is liberal in its construction of the patent, to secure to the inventor the reward he deserves. If what he has done works only a slight step forward, and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope, and infringement will be found only in approximate copies of the new device. It is this differing attitude of the courts toward genuine discoveries and slight improvements that reconciles the sometimes apparently conflicting instances of construing specifications and the finding of equivalents in alleged infringements.

*See also Westinghouse Electric & Mfg. Co. v. Formica Insulation Co.*, 266 U.S. 342, 350 (1924) ("As between the owner of a patent and the public, the scope of the right of exclusion granted is to be determined in the light of the state of the art at the time of the invention.").

With equal clarity, the Supreme Court has repeatedly instructed that patent claim words cannot expand a patentee's rights beyond equivalents of corresponding structure, material, or acts described in a patent's specification. *See, e.g.*, *Festo,* 535 U.S. at 736 ("What is claimed by the patent application must be the same as what is disclosed in the specification; otherwise the patent should not issue."); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co*., 336 U.S. 271, 277 (1949) (patent claims "fail equally to perform their function as a measure of the grant when they overclaim the invention").

In *Union Paper-Bag Machine Co. v. Murphy*, 97 U.S. 120, 125 (1877), the Court explained:

> [I]n determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result.

The rule stated in *Union Paper-Bag Machine Co.* remains the law of the United States to this day. Patent claim words "'define the scope of a patent *grant*,'" *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996) (emphasis added) (quoting 3 E. Lipscomb, Walker on Patents § 11:1, at 280 (3d ed. 1985)),[2] but they do not necessarily provide an accurate description of a person's actual *invention*. Patent claims are not statutes, but point to *external things*, i.e., structure, material, or acts that constitute the "invention" that is "patented":

---

[2]     "Every patent shall contain . . . *a grant* to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the *invention* throughout the United States . . . *referring to the specification for the particulars thereof*." 35 U.S.C. § 154(a)(1) (2012) (emphasis added).

> [T]he specifications . . . profess to describe mechanisms and complicated machinery, chemical compositions and other manufactured products, which have their existence *in pais*, outside of the documents themselves . . . . Indeed, the whole subject-matter of a patent is an embodied conception outside of the patent itself. . . . This outward embodiment of the terms contained in the patent is the thing invented, and is to be properly sought, like the explanation of all latent ambiguities arising from the description of external things, by evidence *in pais*. . . . *It is not the construction of the instrument, but the character of the thing invented, which is sought in questions of identity and diversity of inventions.*

*Markman*, 517 U.S. at 385–86 (emphasis in original) (quoting *Bishoff v. Wethered*, 76 U.S. (9 Wall.) 812, 815–16 (1869)).

In *Winans v. Denmead*, 56 U.S. (15 How.) 330, 338–39 (1853), the Supreme Court set forth the following legal standard for determining the identity of "the thing patented" as a predicate for patent infringement analysis:

> In this, as in most patent cases, founded on alleged improvements in machines, in order to determine what is the thing patented, it is necessary to inquire.
>
> 1. What is the structure or device, described by the patentee, as embodying his invention.
>
> 2. What mode of operation is introduced and employed by this structure or device.
>
> 3. What result is attained by means of this mode of operation.
>
> 4. Does the specification of claim cover the described mode of operation by which the result is attained.

It will thus be seen that determining what patent claim words denote is but one part of the analytical process that the Supreme Court has prescribed for determining what constitutes a "patented invention" for purposes of 35 U.S.C. § 271(a). *See also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (claims formally reciting machinery held invalid as being "directed to" an unpatentable legal relationship). Section 271(a) does not use the word "claim," and a court should not "allow the claim language to become divorced from what the specification conveys is the invention." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011).

The accompanying Report of Eric H. Maslen, Ph.D. (A-661–97), Head of the Department of Integrated Science and Technology at James Madison University, explains in detail why the Goodyear Hybrid product lacks features claimed as structural elements of the '926 and other patents. Dr. Maslen also narrates the accompanying tutorial video. A-654.

## I.   SAC COUNT SIX ('926 PATENT) SHOULD BE DISMISSED AS TO THE GOODYEAR HYBRID PRODUCT.

The non-infringement position with respect to the '926 patent is straightforward. As noted above, claims 1 and 2 the '926 patent are expressly limited to a wiper assembly comprising "*at least one support element (12)*, a wiper strip (14), and a connecting device (16) for a wiper arm (18), *wherein the support element (12) is an elongated, flat bar to which the wiper strip (14) and the connecting device (16) are attached*." A-226 at col. 10:5–9 (emphasis added). This language excludes the Goodyear Hybrid product for at least two independent reasons.

First, the specification of the '926 patent identifies the claimed "support element (12)" as the structure designated "12" and depicted in Figures 1, 2, 3, 4, 6, and 10 of the '926 patent and described in columns 4, 5, 7, and 9 the '926 patent specification. A-216–A-219, A-223–A-226. That structure is a pre-curved spring which distributes force applied by a wiper arm and, in the patent's words, "replaces the costly support bracket design that has two spring strips disposed in the wiper strip, which is the kind used in conventional wiper blades." A-222 at col. 1:22–24. In previous litigation, Bosch acknowledged that the "support element (12)" is "a component of the wiper blade that helps to uniformly distribute force on a windshield *and does so without a support bracket design*." Joint Report on Proposed Claim Constructions at 11, *Robert Bosch LLC v. Trico Prods. Corp*., No. 12 CV 437 (N.D. Ill. Sept. 14, 2012), D.I. 62 (emphasis added). The

Court can and should take Bosch at its word.[3]

Under 35 U.S.C. § 271(a), the legal standard of infringement is: "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Warner-Jenkinson*, 520 U.S. at 40. Here the Goodyear Hybrid product plainly lacks any structure that is identical or equivalent to the claimed "support structure (12)." The "support structure" of the Goodyear Hybrid product comprises central and outer support brackets, pivot couplers, claws, and two wiper strip stiffeners—which is to say, the very type of support structure that the '926 patent states the claimed invention "replaces." The '926 patent nowhere describes any embodiment having articulated support brackets, and the patent's entire disclosure is concerned with how to design and make pre-curved springs that can cause a wiper strip to remain in contact with spherically curved windshield glass[4] throughout its sweep and without using whiffletree load balancing supports like those typically found in conventional and, more recently, "hybrid" wiper blade assemblies in which a conventional support structure is partially concealed by a shroud resembling an airfoil.

Second, and equally importantly, '926 patent claims 1 and 2 characterize the claimed

---

[3]   In the parties' Joint Claim Construction Statement Bosch takes the position that the phrase "support element" should be "construed the same way across all patents." Insofar as the Court takes the view of "support element (12)" that Bosch took in the *Trico* litigation, with which Costco quite agrees, that would provide an independent basis for dismissal of SAC Counts Three and Eighteen discussed in Part II.B, *infra*.

[4]   The '926 patent states in column 1, lines 11–19: "Through an appropriate curvature of the unstressed support element—i.e. when the wiper blade is not resting against the window—the ends of the wiper strip . . . are loaded in the direction of the window by the support element . . . even when *the curvature radii* of *spherically curved vehicle windows* change in every wiper blade position." A-222 (emphasis added). As described in Part V *infra*, the phrase "spherically curved window" is used in claim 1 of U.S. Patent No. 6,973,698 (the "'698 patent"; D.I. 95 Count Eight). Bosch has asked the Court to declare, as an abstract proposition, that the phrase "spherically curved" purportedly can describe a window that has only "one radius of curvature." The proper meaning of "spherically curved" is discussed in part 15 of Dr. Maslen's report (A-674) and in Part V, *infra*. The Court need not determine the meaning of "spherically curved" in order to decide whether Count Six of the SAC should be dismissed as to the Goodyear Hybrid product.

"support element (12)" as being "an elongated, flat bar *to which the wiper strip (14) and the connecting device (16) are attached*." A-226 at col. 10:5–9 (emphasis added). Bosch does not even attempt to argue that the non-rectangular, articulated, multi-piece support brackets of the Goodyear Hybrid product are identical or equivalent to the "support element (12)" which is "an elongated, flat bar." Instead, Bosch asserts that one of two wiper strip stiffeners in the Goodyear Hybrid product should be characterized (fancifully) as the Goodyear Hybrid product's "support element." The contention is unavailing, not only because the cited stiffener is part of a whiffletree bracket support system, but also because the cited stiffener is not "attached" to the wiper arm connector in the Goodyear Hybrid product.

As shown in the images reproduced on pages 8 and 9 above and in the computer animation "Goodyear_Orientation" submitted with the Declaration of Daniel H. Kruger (A-654), the wiper arm connector in the Goodyear Hybrid product snaps into an irregularly shaped opening in the product's central support bracket; it does not even touch the metal wiper strip stiffener that Bosch now asserts is identical or equivalent to the claimed "support element (12)." The central support bracket is pivotally connected to two outer support brackets, which are in turn slidingly engaged with a plastic stiffener, which is in turn slidingly engaged with the subject metal stiffener. To say that the metal stiffener in the Goodyear Hybrid product is "attached" to its wiper arm connector is akin to saying that the tire of a car is "attached" to its windshield. Merely to state Bosch's position is to refute it.

As for the non-rectangular, irregularly shaped central support bracket that *is* "attached" to the Goodyear Hybrid wiper arm connector, no reasonable jury could find that *it* is identical or equivalent to the claimed "support element (12)" and Bosch does not even make any such claim, for good reason. Not only are asserted claims 1 and 2 expressly limited to structures having a

"substantially rectangular" cross-section, but that limitation of the claims was added by way of a narrowing amendment during prosecution in order to distinguish the Swanepoel reference, whose flat spring support structure had varying width and thickness along its length. A-235, A-246. Bosch is, thus, clearly estopped from contending that a structure whose cross section is not "substantially rectangular"—like the central support bracket in the Goodyear Hybrid product—is equivalent to the claimed "support element (12)." *See Festo*, 535 U.S. at 740–41.

Given that the Goodyear Hybrid product so clearly lacks any structure that is identical or equivalent to the claimed "support element **(12)** . . . to which the wiper strip **(14)** and the connecting device **(16)** are attached" (A-226 at col. 10:7–9), there is no need, at this time, for the Court to address whether the '926 patent claim phrase, "$I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an [s-]axis, which adapts along with the support element **(12),** and perpendicular to a y-axis" (A-226 at col. 10:20–22), should stand as written (as Costco contends) or should be radically re-written (as Bosch contends). Nevertheless, if the Court decides to take up this question now, Costco offers the following.

The table below shows the actual '926 claim language, at left, and how Bosch would have the Court re-write the claim language, at right:

| '926 claim language | Bosch's requested re-write |
|---|---|
| $I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an [s-]axis, which adapts along with the support element **(12),** and perpendicular to a y-axis | $I_{zz}$ is ~~a moment of inertia of a cross sectional profile around a z-axis perpendicular to an [s-]axis, which adapts along with the support element (12), and perpendicular to a y-axis~~, calculated by the formula $$I_{zz} = \frac{d * b^3}{12}$$ |

As is set forth in the accompanying Report of Eric H. Maslen, Ph.D. (A-666–67), the

designation "I" is well understood in the field of mechanical engineering to mean a moment of inertia (a measure of the amount of force needed to cause a body to rotate about a desired axis) and the subscripts zz are well understood as identifying the axis around which a moment of inertia is to be taken. Thus, as stated in the claim, $I_{zz}$ identifies a moment of inertia around a z-axis. The claim further states that this "z-axis" is "perpendicular to an [s-]axis" and "perpendicular to a y-axis" as stated above.

The '926 patent specification makes clear that the "z-axis" referred to in the claims is the axis designated "Z" in Figures 4, 5, and 7 (the latter figure is reproduced on page 8, above), which is to say the sweep direction in which a wiper arm is pushed or pulled, an axis generally parallel to the windshield being wiped. The angle identified by the Greek letter gamma, depicted in Figure 7, is an indirect measure of the stiffness of a wiper support structure, and represents the degree to which the outer tip of a wiper assembly lags behind the position of the midpoint of the assembly when it is pushed or pulled by a wiper arm. A-666–67 (Maslen).

Bosch, however, would have the Court completely rewrite the claim so that its definition of $I_{zz}$ as "a moment of inertia of a cross sectional profile around a z-axis perpendicular to an [s-]axis, which adapts along with the support element **(12)**, and perpendicular to a y-axis," would be nullified and replaced by a formula that *does not* define a moment of inertia around the z-axis (sweep direction) identified in the patent. The formula that Bosch proposes defines a completely different parameter—a moment of inertia about an axis *perpendicular* to the wiper sweep direction, an axis identified in the '926 patent as the y-axis of the disclosed coordinate system. *See* A-666 (Maslen) (providing correct formula for calculating claimed moment of inertia).

The mathematical formula given in claims 1 and 2 of the '926 patent could not be used to calculate the bending deflection angle of the support system of the Goodyear Hybrid product. A-

667 (Maslen). The straight metal stiffener in the Goodyear Hybrid product does not, by itself, provide any basis for calculating the extent to which the Goodyear Hybrid product support system bends or deflects when pushed or pulled in the sweep or z-axis direction. A-667 (Maslen). And at all events, that metal stiffener does not remotely satisfy the formulas recited in the asserted claims. A-667 (Maslen). These are independent bases for dismissing SAC Count Six as to the Goodyear Hybrid product.

## II.   SAC COUNTS THREE ('607 PATENT) AND EIGHTEEN ('096 PATENT) SHOULD BE DISMISSED AS TO THE GOODYEAR HYBRID PRODUCT.

SAC Counts Three and Eighteen should be dismissed as to the Goodyear Hybrid product for at least two independent reasons. First, Bosch's rights in those patents are exhausted with respect to OE wiper systems installed in vehicles that were sold in the United States with Bosch's authorization (Part II.A, *infra*). Second, the Goodyear Hybrid product lacks features that the asserted claims describe as elements of the claimed inventions (Part II.B, *infra*).

### A.   Bosch's Rights in the '607 and '096 Patents are Exhausted as to Original Equipment Wiper Systems in Various ████████ ████ Vehicles That Were Sold in the United States With Bosch's Authorization.

The asserted claims of the '607 and '096 patents describe wiper systems that include vehicle wiper *arm* structures. The SAC does not even allege that use or sale of the Goodyear Hybrid product constitutes *direct* infringement of the '607 or '096 patents, lacking as they do any wiper *arm* structures. Rather, Counts Three and Eighteen of the SAC allege that Costco is *indirectly* liable under 35 U.S.C. §§ 271(b) and (c) for alleged acts of direct infringement of the '607 and '096 patents that Costco *customers* supposedly commit when they replace worn-out wiper blades on their vehicles.

The short answer to Bosch's indirect liability theory is: "there can be no contributory infringement in the absence of a direct infringement," *Aro*, 365 U.S. at 341, and "where there has

been no direct infringement, there can be no inducement of infringement under § 271(b)." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014). Costco customers do not infringe the '607 or '096 patents when they replace worn-out wiper blades of original equipment ("OE") wiper systems that were sold in the United States with Bosch's authorization (e.g., as original equipment in ██████████████ ), because Bosch's patent rights in those systems are, as a matter of law, "exhausted." *See Aro*, 365 U.S. at 346 (replacement of worn-out convertible top material did not infringe patents claiming convertible top assembly). The *Aro* decision is practically on all fours with this case, and mandates dismissal of SAC Counts Three and Eighteen as to *at least* the Goodyear Hybrid product.

"The doctrine of patent exhaustion limits a patentee's right to control what others can do with an article embodying or containing an invention." *Bowman v. Monsanto Co*., 133 S. Ct. 1761, 1766 (2013). "Under the doctrine, 'the initial authorized sale of a patented item terminates all patent rights to that item.'" *Id*. (quoting *Quanta Computer, Inc. v. LG Elecs., Inc*., 553 U.S. 617, 625 (2008)). "And by 'exhaust[ing] the [patentee's] monopoly' in that item, the sale confers on the purchaser, or any subsequent owner, 'the right to use [or] sell' the thing as he sees fit." *Id*. (quoting *United States v. Univis Lens Co*., 316 U.S. 241, 249–50 (1942)).

The subject matter claimed in the '607 and '096 patents includes what Bosch calls "side lock" wiper arms. *See* D.I. 95 ¶ 73 ("The Accused Products include adapters that are intended, designed, made, and configured to be used only with a 'side lock' wiper arm."); D.I. 95 ¶ 429 ("The Goodyear Hybrid wiper blades include adapters that are intended, designed, made, and configured to be used only with a 'side lock 2' wiper arm."). Bosch has identified the following vehicles whose OE wiper systems included "side lock" wiper arms: ████████████████

████████████████████████████████████████



A-630–50. The OE wiper systems in these vehicles were supplied to the vehicle manufacturers by ████████████████████████████ ████████████████████████████ *Id.*

Bosch has made no allegation, and has presented no evidence, that the purchasers of these OE wiper systems did not have the right to import them into and sell them in the United States as new vehicle original equipment. On April 22, 2015, Costco deposed Bosch under Rule 30(b)(6) of the Federal Rules of Civil Procedure, by a person having knowledge of vehicles equipped with Bosch OE wiper systems. That witness testified (A-552–54):





An essential element of liability under 35 U.S.C. § 271(a) is that a person alleged to be an infringer be one who acts "without authority." As applied to Counts Three and Eighteen of the SAC, Bosch bears the burden of proving that Costco customers supposedly did not have "authority" to use or repair the OE wiper systems of their vehicles. Yet despite multiple pointed discovery requests seeking identification of any vehicle models whose OE wiper systems could possibly fall in this category, Bosch has identified none. Bosch has not identified so much as a single model year or make of vehicle whose sale or importation into the United States is contended by Bosch to have infringed any of the patents-in-suit.

Courts have consistently held that replacement of a worn part in a patented combination constitutes permissible repair. *See, e.g.*, *Aro*, 365 U.S. at 346; *Husky Injection Molding Sys. Ltd. v. R & D Tool & Eng'g Co.*, 291 F.3d 780, 785–86 (Fed. Cir. 2002); *Everpure, Inc. v. Cuno*, 875 F.2d 300, 303 (Fed. Cir. 1989); *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 886 (Fed. Cir. 1986). As the Supreme Court explained in *Aro*, "maintenance of the 'use of the whole' of the patented combination through replacement of a spent, unpatented element does not constitute reconstruction." *Aro*, 365 U.S. at 346.

In the seminal *Aro* case, the patent-in-suit claimed a convertible top system comprised of flexible fabric, supporting structures, and a mechanism for sealing the fabric against the side of the vehicle. *Id.* at 337. All of the components of the system, except for the fabric, had a useful

life that mirrored the useful life of the convertible. *Id.* at 337–38. The fabric, however, had a much shorter useful life, requiring replacement after three years due to wear and tear. *Id.* An aftermarket for replacement fabrics existed to meet this demand. *Id.* at 338. Based on these key characteristics, the Supreme Court held that the defendant's manufacture, sale, and use of replacement fabrics constituted permissible repair. *Id.* at 346.

Just as the replacement of worn-out convertible top fabric constitutes permissible repair, the replacement of worn-out wiper blades constitutes permissible repair. There is no dispute that wiper blades wear out long before the end of the useful life of the entire wiper system. Bosch designs, manufactures, and markets its wiper blades to be readily replaceable, encouraging its customers to replace their wiper blades every six months. A-624 (Wood Dep. Ex. 1). Ordinary consumers are easily able to replace wiper blades on their vehicles without expert knowledge or tooling, in a short amount of time. A-625 (Wood Dep. Ex. 1). There is a substantial aftermarket for replacement wiper blades, in which all parties to this litigation, including Bosch, as well as numerous other manufacturers and retailers, participate. *See* A-430 (Wood Dep. 16:3–8, Apr. 22, 2015).

Replacing worn-out wiper blades is repair, not reconstruction, of OE wiper systems under *Aro*. Such activity by Costco customers, with respect to OE wiper systems they own, cannot infringe the '607 or '096 patents, and Costco's sale of the Goodyear Hybrid product accordingly cannot constitute indirect infringement.

## B. The Goodyear Hybrid Product Lacks Features That the '607 and '096 Patents Describe as Elements of the Claimed Invention.

As set forth in the accompanying declaration of Dr. Eric Maslen, A-670, the asserted '607 patent claims require structure characterized as "means for securing the wiper blade on the joint pin (56)." A-107 at col. 7:16. The corresponding structure for this "means" recital includes

a peculiarly shaped "device part 30" which has a bearing bore 36, A-105 at col. 4:27-33, and is "capable of swinging about the joint axis (55)," A-99 Abstract, line 8; A-106 at col. 6:16. The Goodyear Hybrid product does not incorporate any such structure and is *not* "capable of swinging about the joint axis" of a wiper arm pin. A-670 (Maslen).

The wiper arm connector in the Goodyear Hybrid product is depicted at right, below; the coupler portion of the claimed "means for securing" in the '607 patent is depicted at left, below:

**'607 Fig. 3 Connector**                    **Goodyear Hybrid Connector**




As shown above, the Goodyear Hybrid product includes a two-part wiper arm connector. The connector requires a wiper arm to be pressed in or pulled up vertically. Its U-shaped recess in the upper adapter does not form any hinge with a wiper arm pin and does not function in the same way as the coupling part (30), which is adapted to receive a wiper arm pin in a bore (36) and to rotate about the axis of the pin and bore to facilitate installation and removal.

The Goodyear Hybrid wiper arm connector is designed to snap into an irregularly shaped opening in a center support bracket, not to sit on a face (27) of a pre-curved spring support carrying element (26) like the coupling part (30). The '607 patent discloses no written description of any wiper assembly having load balancing support brackets or any connector structure suitable for use with such brackets.

As is also set forth in the accompanying declaration of Dr. Eric Maslen, A-671, the

asserted '096 patent claims require a structure characterized as "support element (46)." A-382–83. The Goodyear Hybrid product does not incorporate any such structure, for substantially the same reasons as it does not incorporate any structure that is identical or equivalent to the "support structure (12)" claimed in the '926 patent. A-671 (Maslen).

The asserted '096 patent claims also require structure characterized as a "covering cap (16)." A-382–83. The '096 patent discloses only one embodiment of the claimed "covering cap (16)" which has the peculiar combination of structural features depicted at left, below. The Goodyear Hybrid wiper arm connector structures appear at right, below:

**'096 Patent "Covering Cap (16)**          **Goodyear Hybrid Connector**





Like the coupler structure 30 disclosed in Figure 3 of the '607 patent, the above depicted "covering cap (16)" has a bearing recess (40) that is adapted to receive the pin of a wiper arm and to permit a wiper blade assembly to rotate about the axis of the pin, thus facilitating installation and removal of worn out wiper blades. A-672. As shown at right above, the Goodyear Hybrid product does not incorporate any such design and does not provide any such function. *See also* A-672. The structure depicted at top includes a U-shaped recess into which the pin of a wiper arm can be pressed down or lifted up vertically. The structure does not permit the wiper blade assembly to swing about the axis of the wiper arm pin and thus does not facilitate installation or removal of a wiper blade assembly as does the claimed "covering cap (16)." A-

672 (Maslen).

The claimed "covering cap (16)" is also configured in such a way that its side (32) fits over an airfoil and "connects the connecting profile 30 harmoniously to the ends of the covering cap 16, into which the spoiler 12 is fit." A-382 at col. 4:2–3; A-672. Nothing like such structure of functionality is present in the Goodyear Hybrid product wiper connector structures. A-672.

In view of the similarity between the subject matter claimed in the '607 and '096 patents and the prior art, that subject matter represents, at best, a "slight step forward" and the patents could be infringed "only in approximate copies of the new device." *Eibel*, 261 U.S. at 63. This is an independent basis for dismissal of SAC Counts Three and Eighteen as to the Goodyear Hybrid product.

## III. SAC COUNT EIGHT ('698 PATENT) SHOULD BE DISMISSED AS TO THE GOODYEAR HYBRID PRODUCT.

As noted above, in December 2014 Bosch withdrew its initial contention that use or sale of the Goodyear Hybrid product infringed the '698 patent. In its election of claims on March 6, 2015, Bosch similarly did not assert the '698 patent against the Goodyear Hybrid product. Even in its Second Supplemental Infringement Contentions dated March 20, 2015, Bosch did not assert the '698 patent against the Goodyear Hybrid product. The Court should, accordingly, dismiss Count Eight of the SAC as to the Goodyear Hybrid product under at least Federal Rule of Civil Procedure 37(c)(1).

## IV. THE SAC DOES NOT ASSERT THE '988 PATENT AGAINST THE GOODYEAR HYBRID PRODUCT AND THE COURT SHOULD DENY BOSCH'S BELATED AND FUTILE ATTEMPT TO RAISE SUCH A CLAIM AT THIS LATE STAGE.

The SAC expressly distinguishes between the "Accused Beam Products," on the one hand, and the Goodyear Hybrid product, on the other. Paragraph 12 of the SAC alleges in part: "Such windshield wiper blades are or have been sold under the brand names including the

Goodyear Assurance, the Saver Arc Flex Ultra, the Touring Ultra, the Saver Arc Flex Premium, the Saver Omega Flex (the 'Accused Beam Products'); and the Goodyear Hybrid (collectively, the 'Accused Products')." D.I. 95 ¶ 12.

Count Four of the SAC asserts the '988 patent but does so only as to the Accused Beam Products, not the Goodyear Hybrid product. *See* D.I. 95 ¶¶ 84–112. For example, paragraph 88 of the SAC alleges: "Retail stores, including Costco Wholesale, have infringed and/or are still infringing the '988 patent directly under 35 U.S.C. § 271(a) by selling and offering for sale in the United States *the Accused Beam Products*." D.I. 95 ¶ 88 (emphasis added). The SAC gives absolutely no notice that use or sale of the Goodyear Hybrid product purportedly infringes the '988 patent. In its infringement contentions served in October and December 2014 Bosch similarly did not assert the '988 patent against the Goodyear Hybrid product. In conducting pretrial discovery and otherwise preparing for trial between October 2014 and March 20, 2015, Costco had no inkling that the '988 patent was germane to the Goodyear Hybrid product.

It was not until March 20, 2015, exactly one day after Costco informed Bosch that it intended to seek early summary judgment as to the Goodyear Hybrid product, that Bosch first asserted that the Goodyear Hybrid product purportedly embodies the subject matter described in claim 11 of the '988 patent. Bosch did not seek leave to amend Count Four of the SAC to include such a claim. Bosch has also given no explanation of why it could not have asserted the '988 patent against the Goodyear Hybrid product at any time between the filing of the SAC in October 2014 and March 20, 2015.

Under the circumstances the Court can and should exercise its discretion to deny Bosch leave to amend the SAC to assert the '988 patent against the Goodyear Hybrid product, both because Bosch has not shown good cause for missing the March 20 deadline for pleading

amendments and because the proposed amendment here would be futile as explained below.

The '988 patent is similar to the '926 patent, discussed in Part I, above, in that it discloses a wiper blade assembly having "a bandlike-elongated, spring-elastic support element 12." A-118 at col. 3:41–42. The '988 patent contrasts this design with "[t]he support bracket frame wiper blades that have been in long, widespread use in wiping systems." A-117 at col. 1:7–8. Such prior art "bracket frame" wiper blade assemblies "have a great structural height" whereas "[t]he invention," the patent continues, "is based on a very shallow wiper blade." A-117 at col. 1:9–10, 16. "A wiper blade designed in this way," the '988 patent states, "is considerably shallower than a so-called support bracket frame wiper blade." A-118 at col. 4:1–3. Every embodiment disclosed in the '988 patent has this flat spring design; no other configuration of wiper support is disclosed.

Claim 11 of the '988 patent states in part: "A wiper blade . . . having an elongated, rubber-elastic wiper strip (16) . . . that is disposed . . . on one band face (14) of a band-shaped-elongated, spring-elastic support element (12), and a coupling part (20) connected to a center portion of the support element is seated on another band face (18) of the support element . . . ." A-120 at col. 7:13–20 (emphasis added). This language plainly excludes the Goodyear Hybrid product from its reach, as did the similar language of the '926 patent claims discussed in Part I, above.

First, the specification of the '988 patent identifies the claimed "support element (12)" as the structure designated "12" and depicted in Figures 1, 2, and 3 of the '988 patent and described in columns 3, 4, and 6 the '998 patent specification. *See* A-113–20. That structure is a pre-curved, flat spring which distributes force applied by a wiper arm and, in the patent's words, "is considerably shallower than a so-called support bracket frame wiper blade." A-118 at col. 4:2–3.

In previous litigation, Bosch acknowledged that the "support element (12)" is "a component of the wiper blade that helps to uniformly distribute force on a windshield *and does so without a support bracket design*." Joint Report on Proposed Claim Constructions at 7, *Trico Prods. Corp. v. Robert Bosch LLC*, No. 12 CV 437 (N.D. Ill. Sept. 14, 2012), D.I. 62 (emphasis added). The Court can and should take Bosch at its word.

Second, the Goodyear Hybrid product lacks the claimed "coupling part (20)" for at least the reason that the wiper arm connector in the Goodyear Hybrid product is not "seated on another band face (18) of the support element," as claim 11 of the '988 patent requires. A-120 at col. 7:18–20. Reproduced at right, below, is the sole disclosed embodiment of the claimed "coupling part (20)"; reproduced at left below, from Figure 3 of the '607 patent, is a drawing of a wiper arm end that the claimed "coupling part (20)" is configured to fit. A-115; A-101.



As shown above and below, the claimed "coupling part (20)" has a very specific configuration and is, in particular, "seated on another band face (18) of the support element." A-120 at col. 7:18–20. Both the configuration of the claimed "coupling part (20)" and the meaning of "seated on another band face (18)" can be seen by inspection of the figure below.

As shown in the photographs on page 23 above, the wiper arm connector structures in the Goodyear Hybrid product are in no way "seated on" a band-shaped-elongated, spring-elastic support element (12), but rather are seated on an irregularly shaped central support bracket. A-670 (Maslen). Further, as shown above, in the '988 patent, the claimed "coupling part (20)" includes a "hinge half" because it provides a bearing recess (36) into which the pin of the wiper

arm is inserted to complete the hinge. A-670 (Maslen). By contrast, the U-shaped recess in the Goodyear Hybrid wiper arm adaptor forms no part of any "hinge." The Goodyear Hybrid wiper connector does not permit rotation or swinging about the pin of a wiper arm and thus does not permit installation or removal of a wiper blade assembly as does the claimed "coupling part (20)." A-669, 670 (Maslen).Bosch asserts that one of two wiper strip stiffeners in the Goodyear Hybrid product should be characterized (fancifully) as the Goodyear Hybrid product's "support element." The contention is unavailing, not only because the cited stiffener is part of a whiffletree bracket support system, but also because the wiper arm connector in the Goodyear Hybrid product is not "seated on" the cited stiffener.

As shown in the images reproduced on pages 8, 9 and 23 above, the wiper arm connector in the Goodyear Hybrid product is attached to a central support bracket; it does not even touch the cited wiper strip stiffener. To say that the wiper arm connector in the Goodyear Hybrid product is "seated on" the cited wiper strip stiffener is akin to saying that the windshield of a car is "seated on" the car's tires. Merely to state Bosch's position is to refute it.

Bosch should be held to the existing SAC, which does not assert the '988 patent against the Goodyear Hybrid product. Insofar as Bosch may seek to amend the SAC to make that assertion, the proposed amendment should be denied as untimely and futile as set forth above.

## V.    SUBJECT MATTER THAT SELECTED PATENT CLAIM WORDS AND PHRASES MAY DESCRIBE OR DENOTE.

As noted at the outset, Costco submits that the Court need not and should not undertake to declare what patent claim words might mean or denote in the abstract, an exercise that often "takes on the attributes of something akin to an advisory opinion." *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350 (Fed. Cir. 2006). Without a particular accused structure in view, the Court cannot determine whether Bosch may be barred from seeking to

exclude use of "the particular equivalent in question." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002). Moreover, fact-bound disputes about patent claim scope now require trials, not summary proceedings. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840–42 (2015).

Nevertheless, should the Court find it appropriate to declare what certain patent claim words or phrases might mean or denote outside the context of a merits issue whose resolution requires such a determination, Costco here addresses what appears to be the support for certain patent claim terms in the "written description of the invention" (35 U.S.C. § 112(a)) contained in the specifications of the asserted patents. Insofar as Bosch contends that asserted patent claim words or phrases encompass more than equivalents of corresponding structures disclosed in the specifications and drawings of the patents, such patents should be declared void.

### A.    "Means for Securing" in the '607 Patent

Claim 1 of the '607 patent describes a wiper apparatus that includes a structure characterized as "means for securing the wiper blade on the joint pin (56)." A-107 at col. 7:16. These "means" are depicted in Figure 3 of the '607 patent (below) and the accompanying specification description.



Fig.3

As discussed in Part II.B, above, and in the accompanying Report of Eric H. Maslen, Ph.D., the claimed "means for securing the wiper blade on the joint pin (56)" include both the coupling part (30) and the L-shaped shoulder (60) depicted above. These two components cooperate with one another to secure the wiper blade (14) to the wiper arm (12). The coupling part (30) forms an integral part of the claimed "means." A-670.

### B.    "Securing Means (60)" in the '607 Patent

Claim 1 of the '607 patent distinguishes between the "means for securing the wiper blade on the joint pin (56)," on the one hand and the claimed "securing means (60)," on the other. A-107 at col. 7:16–17. The latter term explicitly refers to the L-shaped shoulder (60) depicted in Figure 3 of the patent, above.

### C.    "Coupling Part (20)" in the '988 Patent

As described in Part IV and in the accompanying Report of Eric H. Maslen, Ph.D., the claimed "coupling part (20)" is the structure so designated in the specification and drawings of

the '988 patent. A-667–70.

D.      **"Means for Maintaining the Clearance" in the '419 Patent**

As described in the accompanying Report of Eric H. Maslen, Ph.D. (A-674), U.S. Patent No. 6,669,419 is directed at wiper systems that employ a pair of spring metal stiffeners secured in opposing grooves running the length of the rubber wiper strip. The rubber separating these two grooves at the center of the wiper strip cross section is referred to as the "bridge" and it is the object of this patent to remedy a collection of operating deficiencies that are claimed to arise when the edges of the stiffeners contact the bridge.

In order to avoid this contact, the distance between the two interior edges of the opposed stiffeners is maintained by one of several structures proposed by the patent as embodiments of "means for maintaining the clearance." These embodiments include simple pegs installed between the two stiffeners, (70) or (170) in Figures 4, 5, 6, and 7 of '419, springs (256) driving the two stiffeners onto outer stops (248) as indicated in Figures 9, 10, and 11, or screws (354) and (356) passing through the stiffeners as indicated in Figures 12 and 13.

The prior art to the '419 patent discloses wiper apparatus comprising (i) rubber wiper strips having vertical necks or "bridge" structures connecting upper and lower portions thereof, (ii) rubber wiper strips having two longitudinal grooves on each side, (iii) elongated stiffeners positioned in the longitudinal grooves of rubber wiper strips, and (iv) numerous means for maintaining the inner longitudinal edges of wiper strip stiffeners out of contact with the rubber wiper neck or "bridge" structures. To overcome prior art wiper apparatus in which wiper strip stiffeners were maintained out of contact with a vertical bridge structure, the applicants amended and limited their claims to the structures 70, 170, 256 or the structures 354 and 356 depicted and described in the '419 patent. A-197–214.

### E.   "Spherically Curved Window" in the '698 Patent

U.S. Patent No. 6,973,698 makes frequent reference to "spherically curved" vehicle windows. A-285–87 at cols. 1:20, 36–37, 52–53, 2:7, 24, 3:26, 5:8, 6:18. The last is within Claim 1 of the patent. The addition of "spherically" to "curved" in describing these vehicle windows is clearly meant to distinguish these vehicle windows from the more generally "curved" vehicle window. Most narrowly construed, one might take "spherically curved" to mean a patch of the surface of a sphere. More broadly construed, the term "spherically curved" is often used to denote curved surfaces that are curved in any of two perpendicular directions at any given point on the surface. That is, such surfaces are different from cylinders or cones in that cylinders and cones have, at any given point on the surface, at least one direction along which the surface is straight and has no curvature. By contrast, a spherically curved surface has, at any given point, no direction along which the surface is straight. In particular, it would not be correct to say that a spherically curved surface has "at least one radius of curvature" as is asserted in Bosch's proposed claim constructions: a cylinder or cone is a surface with one radius of curvature but is certainly not spherically curved. A-674 (Maslen).

### F.   "Support Means (58, 144)" in the '588, '264, and '823 Patents

U.S. Patent No. 7,228,588 refers in its various claims to "support means (58 or 144)." This is a region of the molded "wind deflection strip (42 or 112)" as illustrated in Figures 2 and 3 of '588. The wind deflection strip is roughly triangular in cross section and is hollow. One of the three faces of this wind deflection strip is meant to control the flow of air over the wiper and is referred to as the "incident surface (54 or 140)." A second of the three faces is the outer surface of one of two "sides (48 or 136)" and is generally disposed downstream of the air flow over the wiper blade. The third side of the triangular section is called the "support means (58 or 144)" and forms the base of the triangular section which abuts either a region of harder material

"longitudinal area (62)" or "base strip (130)." In the former case, the "support means (58)" is molded simultaneously with "longitudinal area (62)" but of different and softer material. In the latter case, the "support means (144)" is permanently bonded to the "base strip (130)." A-674–75 (Maslen).

### G.     "Covering Cap (16)" in the '096 Patent

As discussed in Part II.B, above, and in the accompanying Report of Eric H. Maslen, Ph.D. (A-671–74), this term refers to the peculiarly shaped structure that the '096 patent denotes and labels "covering cap (16)."

### H.     Bosch's Proposed Verbal Abstractions

In the parties' Joint Claim Construction Statement (D.I. 142), Bosch has asked the Court to rule that selected words and phrases in asserted claims purportedly encompass any and every structure, of any design, that falls within the words' and phrases' "plain and ordinary meaning." So for example, Bosch asserts that the claimed "support element (12)" ('926 patent) and the claimed "support element (46)" ('096 patent) should be construed to grant Bosch a right to exclude use of any and every type of structure that those generic words describe. Bosch would have the Court read the reference numerals out of the claims and divorce the claims from any technical contribution that Bosch's assignors made to the art of the patents.

The doctrine of equivalents, not result-driven verbal abstractions, provides the measure of a patent's scope beyond what it discloses. If it were true, as Bosch asserts, that generic terms like "support element (12)" encompassed support structures that were neither disclosed in the patents nor equivalent to anything that was disclosed, any claim containing such a term should be declared void for lack of written description. *Cf. Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007) ("The irony of this situation is that Liebel successfully pressed to have its claims include a jacketless system, but, having won that battle, it then had to show that

such a claim was fully enabled, a challenge it could not meet.").

## <u>CONCLUSION</u>

For the foregoing reasons, Costco requests that the Court grant summary judgment dismissing the Second Amended Complaint insofar as it claims that use or sale of the Goodyear Hybrid product constitutes patent infringement. Insofar as the Court is inclined to construe patent claim words or phrases outside the context of any merits controversy they may affect, Costco submits that the Court should apply controlling Supreme Court precedent and construe the claims as proposed by Costco.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)
Thomas Curry (#5877)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
tcurry@mnat.com
  *Attorneys for Costco Wholesale Corporation*

OF COUNSEL:

James W. Dabney
Diane E. Lifton
Walter M. Egbert, III
Richard M. Koehl
Stephen Kenny
Greta A. Fails
Erik Huestis
Stefanie Lopatkin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

April 24, 2015
9089666