IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT BOSCH LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-574 (LPS)(CJB) |
| | ) | (CONSOLIDATED) |
| ALBEREE PRODUCTS, INC., API KOREA | ) | |
| CO., LTD., SAVER AUTOMOTIVE | ) | **REDACTED PUBLIC VERSION** |
| PRODUCTS, INC., and COSTCO | ) | **FILED 5/26/2015** |
| WHOLESALE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## COSTCO'S RESPONSIVE BRIEF TO
## BOSCH'S OPENING CLAIM CONSTRUCTION BRIEF

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Thomas Curry (#5877)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
tcurry@mnat.com
*Attorneys for Costco Wholesale Corporation*

OF COUNSEL:

James W. Dabney
Diane E. Lifton
Richard M. Koehl
Stephen Kenny
Erik Huestis
Greta A. Fails
Stefanie Lopatkin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

May 19, 2015

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.     BOSCH'S FACTUAL DESCRIPTION OF "THE TECHNOLOGY AT
       ISSUE" IS DISPUTED .......................................................................................... 1

II.    BOSCH'S PROPOSED ABSTRACT DECLARATIONS SHOULD NOT
       BE ADOPTED ........................................................................................................ 3

       U.S. Patent 6,553,607 – "Means for Securing the Wiper Blade on the Joint
       Pin (56)" ................................................................................................................. 3

       U.S. Patent No. 6,611,988 – "Coupling Part (20)" ................................................ 6

       U.S. Patent No. 6,668,419 – "Means for Maintaining the Clearance" ................... 9

       U.S. Patent No. 6,836,926 – "Support Element (12)" .......................................... 11

       U.S. Patent No. 6,836,926 – "$I_{zz}$" ...................................................................... 12

       U.S. Patent No. 6,973,698 – "Spherically Curved Window" ............................... 14

       U.S. Patent Nos. 7,228,588, 7,484,264, and 8,099,823 ....................................... 15

       U.S. Patent No. 8,272,096 – "Support Element (46)" and "Covering Cap
       (16)" ..................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Cyanamid Co. v. Hercules Inc*.,
    269 F. Supp. 368 (D. Del. 1966) ................................................................................................ 10

*Ariad Pharms., Inc. v. Eli Lilly & Co*.,
    598 F.3d 1336 (Fed. Cir. 2010) ................................................................................................ 20

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476 (1964) ............................................................................................................... 3, 19

*In re Cuozzo Speed Techs., LLC.*,
    778 F.3d 1271 (Fed. Cir. 2015) ............................................................................................. 6, 18

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) ........................................................................................................ *passim*

*Microsoft Corp. v. Multi-Tech Sys.*,
    357 F.3d 1340 (Fed. Cir. 2004) ............................................................................................... 15

*Miller v. Eagle Mfg. Co.*,
    151 U.S. 186 (1894) ................................................................................................................... 7

*Nautilus Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) .................................................................................................... *passim*

*O'Reilly v. Morse*,
    56 U.S. (15 How.) 62 (1853) ................................................................................................... 20

*Robert Bosch LLC v. Trico Prods. Corp*.,
    No. 12 CV 437 (N.D. Ill. Sept. 14, 2012) ............................................................................... 12

*Teva Pharms. USA, Inc. v. Sandoz, Inc*.,
    135 S. Ct. 831 (2015) ............................................................................................................ 3, 14

*Texas Instruments, Inc. v. Cypress Semiconductor, Inc*.,
    90 F.3d 1558 (Fed. Cir. 1996) ................................................................................................... 6

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co*.,
    520 U.S. 17 (1997) .................................................................................................................. 6, 18

**Rules and Statutes**

35 U.S.C. § 112 ........................................................................................................... 3, 10, 16, 20

Bosch's "Opening Claim Construction Brief" (D.I. 160) asks the Court to "construe" and declare certain claim words or phrases to be vague, free-standing verbal abstractions rather than pointers to structure appearing in the patents' specifications and drawings. For the reasons set forth in Costco's opening brief (D.I. 159), the Court should deny Bosch's application for what amounts to interlocutory declaratory relief because: (i) apart from Costco's pending motion for summary judgment, no merits issue is currently before the Court whose resolution requires the requested declarations; (ii) factual disputes would preclude issuance of most of Bosch's requested declarations; and (iii) the requested declarations would fail to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014).

## I.   BOSCH'S FACTUAL DESCRIPTION OF "THE TECHNOLOGY AT ISSUE" IS DISPUTED

Bosch's brief opens with a purported description of the "technology at issue." D.I. 160 at 1–2. That description is sharply disputed as a factual matter.



Bosch's "claim construction" brief asserts "there are *two main types* of wiper blades on

---

[1]   Exhibits filed with the Appendix to this brief are cited as "Ex. A" etc. Citations in the form "A___" are to pages of the Appendix of Exhibits to Defendants' opening brief (D.I. 161).

the market today—*conventional* wiper blades, and *beam* wiper blades." D.I. 160 at 1 (emphasis

added). In fact, as shown ███████ in A5–14 (technology tutorial by Dr. Eric H. Maslen), there

are three, not two, "main types" of wiper blade assemblies on the market today. Bosch's "claim

construction" brief omits mention of hybrid wiper blade assemblies like ████████████

████████████████ the one depicted in Figure 2 of U.S. Patent No. 6,000,093 to Charng

("Charng"; A89–98) reproduced below (dotted lines added):



As Costco has shown (D.I. 159 at 6, 8–9, 13–15, 23), hybrid wiper support distribute

wiper arm force through load balancing whiffletree support brackets in substantially the same

way as do conventional or bracket-style wiper blade assemblies. A13–14, A664. ████████

████████████████████████████████████████████████

████████████████████████████████████████

The force distribution mechanism in both conventional and hybrid wiper blade

assemblies includes stiffeners, such as the Charng structure 15 depicted above, which receive

force from support bracket claw structures and transmit the force along the length of a rubber

wiper strip. A6–8, A664. Bosch's assertion that a "bracketed support structure" is the "only"

force distribution mechanism in "conventional" wiper blade assemblies (D.I. 160 at 2) is sharply

disputed as a factual matter. *See* Ex. B (Second Expert Report of Eric H. Maslen, Ph. D.) at 4.

Also disputed is Bosch's further assertion that a pre-curved flat spring wiper support

(e.g., a structure like the claimed "support element (12)" in the '926 patent) will purportedly

apply wiper arm pressure "more evenly" (D.I. 160 at 2) than a conventional or hybrid wiper

support. In fact, depending on the curvature of a given windshield and the mechanical properties of a given flat spring wiper support, a conventional or hybrid wiper support can distribute wiper arm force more evenly than a pre-curved flat spring. *See* Ex. B at 4.

In *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840–42 (2015), the Supreme Court held that factual disputes concerning the "construction" of patents are just that, factual disputes. A trial to the Court would be necessary to determine the disputed factual issues Bosch has raised in support of its application for an order "construing" certain claim terms as being verbal abstractions. On this basis alone, the Court should deny Bosch's application.

## II.   BOSCH'S PROPOSED ABSTRACT DECLARATIONS SHOULD NOT BE ADOPTED

## U.S. Patent 6,553,607 – "Means for Securing the Wiper Blade on the Joint Pin (56)"

As Costco has shown (D.I. 159 at 3, 18–22), Bosch's rights in the '607 patent are "exhausted" with respect to original equipment ("OE") wiper systems installed in vehicles that were sold in the United States with Bosch's authorization. As to these systems, it is moot what structure is the "corresponding structure" (35 U.S.C. § 112 ¶ 6 (2006)) [2] for the '607 patent claim 1 recital, "means for securing the wiper blade on the joint pin (*56*)."

Nevertheless, in the event that (i) Bosch now identifies some vehicle whose initial sale in or importation into the United States purportedly infringed the '607 patent, *cf. Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 484–85 (1964) ("*Aro II*") (where initial sale of vehicles was unlicensed and infringed patent claiming convertible top assembly, subsequent use and repair of the convertible top fabric also infringed); and (ii) the Court elects to declare, potentially unnecessarily and in a factual vacuum, what structures correspond with the claimed "means for securing the wiper blade on the joint pin (56)," that question is treated briefly at

---

[2]   The patents-in-suit all have effective filing dates earlier than September 16, 2012, and so are governed by the 2006 version of § 112. *See Nautilus,* 134 S. Ct. at 2125 n.1.

D.I. 159 at 22–23 and A670 and further treated here. Claim 1 of the '607 patent recites (A107; emphasis added):

> 1. *Wiper apparatus (**10**)* for motor vehicle windshields, with an elongated driven wiper arm (**12**) located on a motor vehicle body, movable between reversing positions, on a free end of said arm is fixed on one end of *a cantilevered joint pin (**56**) with a joint axis (**55**)* extending transverse to 10 the longitudinal axis of the wiper arm and essentially in the direction of movement of the wiper arm, on said joint pin being mounted *a wiper blade (**14**) capable of swinging about the joint axis (**55**)*, said blade having spaced sides with said arm lying on one of said sides *the wiper apparatus having means for securing the wiper blade on the joint pin (**56**),* characterized in that the securing means (**60**) are disposed on the wiper arm (**12**) and extending therefrom and that on the other side of the wiper blade (**14**) facing away from said wiper arm *said means cooperate with a stop (**62, 63**)* located on the other side of the wiper blade.

Figures 3 and 5 of the '607 patent (A101–02) are reproduced below. The (potentially moot) question that divides the parties is whether the claimed "means for securing the wiper blade on the joint pin (56)" includes the structure (30) shown in the lower half of Figure 3 below:



Bosch asserts (D.I. 160 at 3–5) that the claimed "means for securing the wiper blade on the joint pin (56)" purportedly covers *only* the L-shaped structure 60 depicted in the upper half of Figure 3, above. In support, Bosch presents a cropped *fragment* of Figure 3 (D.I. 160 at 4) which

omits both the bracket on the left side and the disclosed structure 30 which the '607 patent describes as "coupling part, 30 with the aid of which wiper arm 12 can be connected with wiper blade 14 in an articulated manner." A105 at col. 4: 25–17.

After presenting a cropped fragment of Figure 3, Bosch asserts, "Moreover, 'means for securing' the wiper blade on the wiper arm should not be construed to include a part of the wiper blade itself, as no such corresponding structure is disclosed in the specification." D.I. 160 at 5. This statement is wrong: as is clearly shown in the *full* Figure 3 above, the specification of the '607 patent (A105 at col. 4:22–25) most certainly *does* disclose a "wiper blade 14" having "a one-part, strip-like carrying element 26" and a "coupling part, 30" which, in Bosch's words, is "part of the wiper blade itself." D.I. 160 at 5. The coupling part (30) forms an integral and essential part of the claimed "means for securing the wiper blade on the joint pin (56)." *See* Ex. B at 6. Indeed, without the structure (30) or an equivalent structure, the L-shaped structure 60 would not secure the wiper blade (14) to the joint pin (56). *Id.*

The concluding language of '607 patent claim 1, "said means cooperate with a stop (**62, 63**) located on the other side of the wiper blade" (A107 at col. 7:20–21), eliminates any possible doubt whether structure 30, or an equivalent structure, is included in the claimed "means." The reference numerals 62, 63 denote the downward extending portion of the L-shaped shoulder 60 depicted in Figures 3 and 5, above. The phrase, "said means *cooperate* with a stop (62, 63)," describes a structure that *cooperates* with the L-shaped shoulder (60) and thus cannot *be* the same structure as the L-shaped structure. *See* Ex. B at 7. The L-shaped shoulder (60) does not "cooperate" with itself, but rather cooperates with the coupling part (30) or its equivalent. *Id.*

Citing a handful of district court decisions (all but one of which is unreported), a 12-year-old administrative decision, and the Manual of Patent Examining Procedure ("MPEP"), Bosch

asserts that it purportedly "is well-settled reference numerals in the claims have no effect on claim scope." D.I. 160 at 5. In fact, "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention . . . ." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). In this case, the reference numerals in the claims tell a person skilled in the art, without any ambiguity or doubt, what structures disclosed in the '607 patent specification are being referred to as constituting elements of the claimed invention. *See* Ex. B at 6. The cited MPEP sections and BPAI decision are irrelevant here, for the PTO has long applied a rule of "broadest reasonable construction" different from that applied by federal courts. *See In re Cuozzo Speed Techs., LLC.*, 778 F.3d 1271, 1280 (Fed. Cir. 2015).

Bosch's reliance on an unreported interlocutory ITC order (D.I. 160 at 4 n.4) is misplaced for several reasons. First, the evidence and arguments Costco is making here were not presented to the ITC. Second, the ITC lacks subject matter jurisdiction to issue any definitive or preclusive determinations of patent issues. *See Texas Instruments, Inc. v. Cypress Semiconductor, Inc.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) ("Congress did not intend decisions of the ITC on patent issues to have preclusive effect"). Third, the cited ruling actually *rejected* the proposed "construction" of the '607 patent that Bosch would have this Court adopt. D.I. 160 Ex. 1 at 15 ("the L-shaped shoulder alone cannot accomplish the function of securing the wiper blade to a wiper arm").

### U.S. Patent No. 6,611,988 – "Coupling Part (20)"

As Costco has previously shown (D.I. 159 at 1–2, 3–4, 25–26), the Second Amended Complaint ("SAC") does not assert the '988 patent against the Goodyear Hybrid product and there is not now pending before the Court any merits issue whose resolution requires "construction" of claim 11 of the '988 patent. There is, moreover, a strong likelihood that the Court will never be required to "construe" claim 11 of the '988 patent; for the '988 patent claims a portion of the combination that is claimed in the '607 patent and is, therefore, almost certainly

void for double patenting no matter how it is "construed." *See Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 201 (1894) ("a single element or function of a patented invention cannot be made the subject of a separate and subsequent patent").

Nevertheless, in the event the Court entertains Bosch's recent back-door attempt to amend the SAC to assert the '988 patent against the Goodyear Hybrid product (D.I. 159 at 1–2, 3–4, 25–26), the Court can and should hold that claim 11 of the '988 patent requires structural elements that the Goodyear Hybrid product lacks. Figure 3 of the '988 patent is shown at left, below; connector structures of a Goodyear Hybrid product are depicted at right, below:

| **'988 Patent Figure 3** | **Goodyear Hybrid Connector Structures** |
|:---:|:---:|




Claim 11 of the '988 recites (emphasis added):

11. A wiper blade for cleaning motor vehicle windows and glass, having an elongated, rubber-elastic wiper strip (**16**) that can be pressed against the window and glass (**24**) and that is disposed, parallel to a longitudinal axis, on one band face (**14**) of a band-shaped-elongated, spring-elastic support element (**12**), and *a coupling part (20) connected to a center portion of the support element is seated on another band face (18) of the support element* and has one *hinge half*, whose hinge axis (**52**) is oriented transversely to a length of the wiper blade (**10**), *wherein both this hinge half and coupling means of the wiper blade are formed by a bearing recess (36)* in the coupling part (**20**) and in a longitudinal direction of the wiper blade (**10**), *the bearing recess (36) is disposed near one end of the coupling part (20)*, and that a thickness of the coupling part (**20**) between one end region provided with the bearing recess and another end of the coupling part is less, at least over a longitudinal portion (**50**), than an end portion of the coupling part that has the bearing recess.

The italicized claim language quoted above describes features of the only structure that the '988 patent discloses and identifies as a "coupling part (20)," depicted at left above. The disclosed "coupling part (20)" is, as shown in Figure 3, "seated on" a "band face (18)" of "a band-shaped-elongated, spring-elastic support element (12)." The phrase "seated on" characterizes the direct physical relationship of the structures identified as 20 and 18 in Figure 3 of the '988 patent, in which the coupling part (20) abuts and is literally "seated on" the disclosed "band face (18)" of a pre-curved flat spring support element with no intermediate structure between the coupling part (20) and band face (18). No such structure is found in the Goodyear Hybrid product depicted at right, above. *See* Ex. B at 10.

Additionally, as a result of a narrowing amendment made during prosecution (A121–78), the claimed "coupling part (20)" is limited to one in which (i) a "hinge half and coupling means of the wiper blade are formed by a bearing recess (36) in the coupling part (20)," (ii) "the bearing recess (36) is disposed near one end of the coupling part (20)," and (iii) a thickness of the coupling part (20) between one end region provided with the bearing recess and another end of the coupling part is less, at least over a longitudinal portion (50), than an end portion of the coupling part that has the bearing recess." This language describes features of the claimed "coupling part (20)" which the accused Goodyear Hybrid product lacks. *See* Ex. B at 10–11.

The wiper arm connector in the Goodyear Hybrid product does not form any "hinge" and thus lacks the claimed "hinge half"; the upper part of the Goodyear Hybrid wiper arm connector snaps into jaws of a coupler positioned in the center, not near one end, of the lower part of the connector; and the thickness of the connector in the Goodyear Hybrid product is greater, not less, than it is in the portion where the U-shaped opening exists. That opening is, moreover, not a "bearing recess" but accommodates vertical insertion and removal of a wiper arm side pin. *Id.*

Without reference to any accused product or merits issue, Bosch asserts (D.I. 160 at 5–7) that the phrase "coupling part (20)," as used in the above-quoted claim, should be declared by the Court to encompass any and every structure that a lay person might find is described by the "plain and ordinary meaning" of the phrase "coupling part." The Court should decline to issue the requested declaration for several reasons. First, the '988 patent discloses but a single embodiment of the claimed "coupling part (20)." Second, the reference numeral "20" leaves no doubt as to what structure the claim phrase "coupling part (20)" is denoting. Third, the requested declaration would completely fail to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

In the field of mechanical engineering, the phrase "coupling part" does not connote any particular structure or any particular design, form, or configuration of structure. *See* Ex. B at 11. The adjective "coupling" is a functional characterization that does not describe *how* a part may "couple" or "uncouple" to another or the *way* that a part may "couple" or "uncouple" to another or the *ease* with which a party may "couple" or "uncouple" to another. *Id.* "Coupling" describes a vast array of components and forms. *Id.* The '988 patent, by contrast, discloses but one, peculiarly configured structure denoted as "coupling part (20)" and that is the one depicted in Figure 3 of the patent. *See* Ex. B at 11.

**U.S. Patent No. 6,668,419 – "Means for Maintaining the Clearance"**

The '419 patent is not asserted against the Goodyear Hybrid product. There is not now pending before the Court any merits issue whose resolution turns on whether or how claim 1 of the '419 patent is construed. The Court need not and should not issue declaratory relief in a factual vacuum as Bosch proposes.

Claim 1 of the '419 patent was narrowed during prosecution (A197–214), but without a particular accused structure in view, the Court cannot determine whether the narrowing

amendment bars Bosch from seeking to exclude use of "the particular equivalent in question." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002). Bosch bears the burden of proof on this point, *id.*, but its opening claim construction brief does not even mention the narrowing amendment. Bosch has asserted that it has never practiced the '419 patent (D.I. 152 Ex. 2 at 6–9). According to some authority, the '419 patent may be deemed a "paper patent" and, as such, "strictly construed." *Am. Cyanamid Co. v. Hercules Inc.*, 269 F. Supp. 368, 374 (D. Del. 1966) (Wright, J.).

Nevertheless, should the Court elect to take up the potentially moot question of what constitutes the "corresponding structure" (35 U.S.C. § 112 ¶ 6 (2006)) of the claimed "means for maintaining the clearance," Costco refers the Court to D.I. 159 at 31–32 and the further discussion below. Claim 1 of the '419 patent recites (emphasis added):

> 1. A wiper blade for motor vehicles windows, comprising an elongated rubber-elastic wiper strip having a wiper lip and two longitudinal sides with two longitudinal grooves located substantially in one plane so that between both longitudinal grooves a bridge is provided; a band-shaped elongated spring-elastic carrier element is defined by *a pair of springs*, the springs are accommodated in the longitudinal grooves so as to each extend with at least a section outwardly beyond a respective longitudinal groove, wherein with respect to a longitudinal center line of the wiper strip the sections are located opposite to one another to define facing and opposite longitudinal edges and at least on one of the sections *a bridge-shaped component* that overlaps both springs fits against opposite longitudinal edges of the springs, so that *a distance between the facing longitudinal edges of the springs is greater than a width of the bridge to define a clearance*, and *means for maintaining the clearance is arranged on the component*.

Bosch asserts (D.I. 160 at 8–9) that the Court should "construe" the claimed "means for maintaining the clearance" as being an inscrutable verbal abstraction (e.g., "a peg situated on the base plate of a bridge-shaped component") and then to declare that the claimed "means" includes any and every structure that a lay person might find is described by the proposed verbal abstraction and equivalents of those unidentified structures.

- 10 -

The Court should decline to issue the requested declaration for several reasons. First, the proposed "construction" does not identify any particular disclosed structures that correspond with the claimed "means for maintaining the clearance." *See* Ex. B at 12. Second, the requested declaration would completely fail to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129. Third, claim 1 was narrowed during prosecution to distinguish European Patent EP 0464507 (A197–214) and Bosch has wholly failed to carry its burden of demonstrating that it retained any relevant range of equivalents for this claim limitation.

As averred by Dr. Maslen, a person skilled in the art would find that the structures that correspond with the claimed "means for maintaining the clearance" are either (i) the structures 70, 170, 256 or (ii) the structures 354 and 356 depicted and described in the '419 specification and drawings. Bosch's proposed verbal characterizations are, at best, extremely vague descriptions of those structures which could serve only to confuse a lay person about what structures are being referred to. *See* Ex. B at 12.

**U.S. Patent No. 6,836,926 – "Support Element (12)"**

For the reasons set forth in Costco's opening brief for summary judgment (D.I. 159 at 13–16), the '926 patent claim phrase "support element (12)" denotes the pre-curved flat spring structure that the '926 patent (i) *describes* as the structure designated "12" in Figures 1, 2, 3, 4, 6, and 10 (A216–19), (ii) *claims* as "an elongated, flat bar to which the wiper strip (**14**) and the connecting device (**16**) are attached" (A226 at col. 10:7–9), and (iii) *characterizes* as a structure that "replaces the costly support bracket design that has two spring strips disposed in the wiper strip, which is the kind used in conventional wiper blades" (A222 at col. 1:22–24).

In previous litigation, Bosch acknowledged that the "support element (12)" is "a component of the wiper blade that helps to uniformly distribute force on a windshield *and does*

*so without a support bracket design*." Ex. C (Joint Report on Proposed Claim Constructions, *Robert Bosch LLC v. Trico Prods. Corp.*, No. 12 CV 437 (N.D. Ill. Sept. 14, 2012), D.I. 62) at 11 (emphasis added). The Court can and should take Bosch at its word.

In a complete reversal from the position that it recently took in the *Trico* litigation, Bosch now asserts (D.I. 160 at 11–12) that the '926 patent claim 1 phrase "support element (12)" should be declared by the Court to encompass any and every structure that a lay person might find is described by the "plain and ordinary meaning" of the phrase "support element." The Court should decline to issue the requested declaration for several reasons.

First, the reference numeral "12" leaves no doubt as to what structure the claim phrase "support element (12)" is denoting. Second, claim 1 was narrowed during prosecution to avoid prior art (A229–80) and Bosch has failed to carry its burden of demonstrating that it retained any relevant range of equivalents for this claim limitation. *See Festo*, 535 U.S. at 740. Third, the requested declaration would fail to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

In the field of mechanical engineering, the phrase "support element" does not connote any particular structure or any particular design, form, or configuration of structure. *See* Ex. B at 13. The adjective "support" is a functional characterization that does not describe how a structure may "support" another or the way that a structure may "support" or provide "support" to another or the efficacy with which a structure may "support" or provide "support" to another. *Id*. "Support" describes a vast array of components and forms. *Id*. The '926 patent, by contrast, discloses but one structure identified as "support element (12)" and that is a pre-curved, flat spring that lacks load-balancing brackets typical of conventional and hybrid wiper supports. *Id*.

**U.S. Patent No. 6,836,926 – "$I_{zz}$"**

As Costco has previously shown (D.I. 159 at 16), the Court need not now decide, and

may never need to decide, whether claim 1 of the '926 patent may rightly have read into it a formula that contradicts what claim 1 itself defines the term $I_{zz}$ to be. *See* A666; Ex. B at 8–9.

Relying on extrinsic evidence, i.e., a Declaration of Dr. Steven Dubowsky (D.I. 162), Bosch asserts that a person skilled in the art would *selectively* consult the specification of the '926 patent in order to determine the value of $I_{zz}$ in the equation recited in the claim. According to Dr. Dubowsky, a person skilled in the art (i) would ignore what the patent specification defines as the "z-axis" and (ii) "construe" claim 1 of the '926 patent as prescribing a formula for calculating $I_{zz}$ that does not meet the terms of claim 1 and does not define a moment of inertia about the z-axis identified in Figures 3, 4, 5, and 7 of the '926 patent.

To "construe" the claim term $I_{zz}$ in the manner that Dr. Dubowsky urges, the Court would have to cancel and negate the claim language, "a moment of inertia of a cross sectional profile around a z-axis perpendicular to an [s-]axis, which adapts along with the support element (**12**), and perpendicular to a y-axis" (A226 at col. 10:20–22) and also treat "$I_{zz}$" as erroneous and not having the meaning a person skilled in the art would give it, and instead re-define $I_{zz}$ as being the result of a mathematical formula that defines a moment of inertia about a y-axis, as if the claim recited $I_{yy}$ rather than $I_{zz}$. *See* Ex. B at 8–9, 13.

Bosch's proposed "construction" of $I_{zz}$ in claim 1 of the '926 patent would completely change its meaning. Costco's expert, Dr. Maslen, does not agree that a person skilled in the art would understand the term $I_{zz}$ as denoting something other than a moment of inertia about the z-axis identified in Figures 3, 4, 5, and 7 of the patent. *Id.* at 9. Dr. Maslen also does not agree that a person skilled in the art would make *selective* reference to the '926 patent specification. Ex. B at 13.

Bosch at best raises a disputed issue of fact as to the proper interpretation of $I_{zz}$, which

dispute could only be resolved by a trial to the Court to determine whether Dr. Dubowsky or Dr.

Maslen should be believed with regard to what the term $I_{zz}$ denotes as used in '926 patent claims

1 and 2. *See Teva*, 135 S. Ct. at 840–42. Costco incorporates by reference its previous discussion

of this issue (D.I. 159 at 16–18) and Dr. Maslen's rebuttal to Dr. Dubowsky. *See* Ex. B at 8–9.

**U.S. Patent No. 6,973,698 – "Spherically Curved Window"**

As Costco has previously shown (D.I. 159 at 1, 3, 25), Bosch has abandoned its claim

that use or sale of the Goodyear Hybrid product infringes the '698 patent. There is not now

pending before the Court any merits issue whose resolution turns on whether claim 1 of the '698

patent is construed one way or another. The Court need not and should not issue declaratory

relief in a factual vacuum as Bosch proposes. Bosch has admittedly practiced the '698 but patent

failed to fix patent numbers on OE wiper products allegedly practicing the '698 patent (D.I. 152

Ex. 2 at 6; D.I. 171 at 1).

Claim 1 of the '698 patent was narrowed during prosecution (A289–321), but without a

particular accused structure in view, the Court cannot determine whether the narrowing

amendment bars Bosch from seeking to exclude use of "the particular equivalent in question."

*Festo*, 535 U.S. at 740. Bosch bears the burden of proof on this point, *id*., but its opening claim

construction brief does not even mention the narrowing amendment.

Nevertheless, should the Court elect to take up the potentially moot question of what the

phrase "spherically curved window" means in the context of claim 1 of the '698 patent, Costco

refers the Court to D.I. 159 at 32–33 and the further discussion below. Claim 1 of the '698 patent

recites (emphasis added):

> 1. A wiper blade for a wiping device of a motor vehicle for wiping a window of
> the motor vehicle, comprising an elongated wiper strip placeable against the
> window, and an elongated spring-elastic carrying element disposed on a side of
> the wiper strip remote from the window, said spring elastic carrying element
> extending parallel to an axis of elongation of said wiper strip to distribute a

contact force against the window over an entire length of said wiper strip, said wiper strip having a center section and two end sections, said contact force of said wiper strip being greater in said center section than in at least one of said two end sections, said spring-elastic carrying element has on a side thereof oriented toward the window a concave curvature that is sharper than the sharpest curvature of *a spherically curved window* in a region of a wiping field that can be swept across by said wiper blade and a concave curvature in said center section of the carrying element is sharper than in said sections thereof.

As Costco has previously noted (D.I. 159 at 33), the phrase "spherically curved" is a term of art in the field of mechanical engineering. It connotes a three dimensional surface which cannot be wiped with a straight blade. The phrase is meaningful as characterizing a complex curved windshield surface and is used in its ordinary sense in the '698 patent. Ex. B at 14; A674.

Bosch asserts that "spherically curved" purportedly includes a surface that has "one radius of curvature." D.I. 160 at 13. This assertion is sharply disputed as a factual matter. *See* A674; Ex. B at 14. Bosch's proposed "construction" would read the word "spherically" out of the claim. Ex. B at 14. To say that a surface has "one radius of curvature" is equivalent to saying it is "other than flat or straight." *Id*. Spherical curvature connotes curvature in which a surface is curved in three dimensions, as the surface of a sphere is. *Id*.

**U.S. Patent Nos. 7,228,588, 7,484,264, and 8,099,823**

The '588, '264, and '823 patents are not asserted against the Goodyear Hybrid product. There is not now pending before the Court any merits issue whose resolution turns on whether '588, '264, or '823 patents are construed one way or another. The Court need not and should not issue declaratory relief in a factual vacuum as Bosch proposes.

In addition, the claims of at least the '588 and '264 patents were narrowed during prosecution (A331–45, A354–66),  which also binds the '823 patent. *See Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (holding that statements made in the prosecution of one patent are relevant to the scope of all related patents). But without a particular

accused structure in view, the Court cannot determine whether the narrowing amendment bars

Bosch from seeking to exclude use of "the particular equivalent in question." *Festo*, 535 U.S. at

740. Bosch bears the burden of proof on this point, *id.*, but its opening claim construction brief

does not even mention the narrowing amendment.

Nevertheless, should the Court elect to take up the potentially moot question of what

constitutes the "corresponding structure" (35 U.S.C. § 112 ¶ 6 (2006)) of the claimed "support

means (58 or 144)" in the '588, '264, or '823 patents, Costco refers the Court to D.I. 159 at 33

and the further discussion below.

Claim 1 of U.S. Patent No. 7,228,588 reads (emphasis added):

1. A wiper blade (10) to clean windshields (14), in particular of automobiles, with
an elongated belt-shaped, flexible spring support element (12), on the lower belt
surface (22) of which that faces the windshield is located an elastic rubber wiper
strip 24 sitting against the windshield that extends parallel to the longitudinal axis
and on the upper belt surface (16) of which a wind deflection strip (42 or 112) is
located that has an incident surface (54 or 140) facing the main flow direction of
the driving wind (arrow 52), said deflection strip extending in the longitudinal
direction of the support element, characterized in that the wind deflection strip has
two sides (48, 50 or 136, 138) that diverge from a common base point (46 or 134)
as seen in a cross section, that the incident surface (54 or 140) is located at the
exterior of one side (50 or 138) and that the profile of the cross section of the
wind deflection strip is the same along its entire length, in that between the two
sides (48, 50 or 136, 138) of the wind deflection strip (42 or 112) there is *at least
one support means (58 or 144) located at a distance from their common base
point (46 or 134) that stabilizes the sides*, and in that *the support means is made
up of a wall (58 or 144) connected to both sides (48, 50 or 136, 138) that extends
in the longitudinal direction of the wind deflection strip (42 or 112)*.

The above claim language describes wiper apparatus that is depicted in Figure 2 of the

'588 patent, complete with reference numerals that leave no doubt as to what the corresponding

structures are. *See* Ex. B at 15. For example, the claimed "at least one support means (58 or

144)" clearly refers to the structures 58 and 144 described and disclosed in the specification of

the '588 patent. The claims repeatedly refer to structures, both by name and by reference

number, that are described in the specification. These features of Claim 1 are also present in

Claims 12 and 14 of the '588 patent, Claims 1, 2, and 3 of U.S. Patent No. 7,484,264, and Claims 1, 6, 9, and 10 of U.S. Patent No. 8,099,823.

Bosch asserts (D.I. 160 at 15) that the structures corresponding to "at least one support means (58, 144)" are "a wall connected to both sides of the wind deflection strip" and "the channel wall facing the upper belt surface of the support element." This assertion is sharply disputed as a factual matter. *See* Ex. B at 15–16. The structures corresponding to "at least one support means (58, 144)" are the structure 58 and the structure 144. The '588, '264, and '823 patents all disclose two embodiments, as shown in Figures 2 and 3 of each patent.



Figure 2 shows one embodiment which includes the structure 58, and the patents all explain in detail how structure 58 relates to the various other structures of that embodiment. For example, *see* '588 Patent col. 4:63– 5:67. Figure 3 shows another embodiment which includes the structure 144, and the patents all explain in detail how structure 144 relates to the various other structures of that embodiment. For example, *see* '588 Patent col. 6:1–48. The patents also explain common features of both structures. For example, *see* '588 Patent col. 7:13–21.

Bosch's term "a wall connected to both sides of the wind deflection strip" does not point to these specific structures in the specification, but instead points ambiguously to language already found in the claims (for example, Claim 1 of the '588 Patent states "the support means is made up of a wall (58 or 144) *connected to both sides* (48, 50 or 136, 138) . . ."). Bosch's

- 17 -

alternative term "the channel wall facing the upper belt surface of the support element" is similarly ambiguous. The common specification describes other features of the support means 58 or 144 patent that go beyond these aspects of structures 58 and 144. For example, in the embodiment of Figure 2 the "wall 58 . . . is connected to the two sides 48, 50." *See* '588 patent, col. 5, ll. 42–44. Also, the specification states, "In general, the wall 58 is placed at a distance from the claw-like extensions 56 and the support element 12 between it and the common base point 46 of the two sides 48, 50, so that an recess 60 results between the support element and the wall 58 that provides space for the strip flaps 25 of the wiper strip 24 located above the support element. This prevents the wiper strip 28 and the wind deflection strip 42, i.e. its wall 58 from touching one another, which disrupts the wiping process." *See* '588 patent, col. 5, ll. 55–61. As another example, in the embodiment of Figure 3, "It also has a longitudinal cavity 142 that is placed such that between it and the longitudinal channel 118 a wall 144 remains that connects the sides 136, 138, which result from the cavity, that diverge from a common base point 134 toward the windshield 14." '588 patent, col. 6, ll. 25–29.

Bosch also asserts (D.I. 160 at 15) that "reference numerals in the claims have no effect on the claim scope." In fact, as noted above "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention . . . ." *Warner-Jenkinson*, 520 U.S. at 29. In this case, the reference numerals in the claims tell a person skilled in the art, without any ambiguity or doubt, what structures disclosed in the '607 patent specification are being referred to as constituting elements of the claimed invention. *See* Ex. B at 15. The cited MPEP sections and BPAI decision are irrelevant here, for the PTO has long applied a rule of "broadest reasonable construction" different from that applied by federal courts. *See Cuozzo*, 778 F.3d at 1280.

**U.S. Patent No. 8,272,096 – "Support Element (46)" and "Covering Cap (16)"**

As Costco has previously shown (D.I. 159 at 3, 18–22), Bosch's rights in the '096 patent are "exhausted" with respect to OE wiper systems installed in vehicles that were sold in the United States with Bosch's authorization. As to these systems, it is moot how the '096 patent might be construed.

Nevertheless, in the unlikely event that (i) Bosch now identifies some vehicle whose initial sale in or importation into the United States purportedly infringed the '607 patent, *cf. Aro II*, 377 U.S. at 484–85 (where initial sale of vehicles was unlicensed and infringed patent claiming convertible top assembly, subsequent use and repair of the convertible top fabric also infringed); and (ii) the Court elects to declare, potentially unnecessarily and in a factual vacuum, what structures are denoted by the '096 patent claim phrases "support element (46)" and "covering cap (16)," Costco refers the Court to D.I. 159 at 23–25 and A671 and the further discussion below.

Bosch asserts (D.I. 160 at 17–18) that the claim phrases "support element (46)" and "covering cap (16)" should be "construed" as being verbal abstractions that encompass any and every structure that a lay person might find is described by the "plain and ordinary meaning" of the phrases "support element" or "covering cap." The requested declarations would completely fail to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

In the field of mechanical engineering, the phrases "support element" and "covering cap" do not connote any particular structure or any particular design, form, or configuration of structure. Ex. B at 17. The adjectives "support" and "covering" are a functional characterizations that do not describe *how* a structure may "support" or "cover" another or the *way* that a structure may "support" or "cover" another or the *efficacy* with which a structure may "support" or cover

- 19 -

another. "Support" and "covering ca;" describe a vast array of components and forms. *Id*. The '096 patent, by contrast, discloses but one type of structure identified as "support element (46)" and a peculiarly shaped structure denoted as "covering cap (16)." A671–72.

As averred by to Dr. Maslen, a person skilled in the art of the '096 patent would understand the claim phrases "support element (46)" and "covering cap (16)" as denoting the similarly numbered structures that are disclosed in the '096 patent specification and drawings. Ex. B at 18. To say this is not to say that no range of equivalents might be available for those elements, but the reference numerals in the claims tell a person skilled in the art, without ambiguity or doubt, what structures disclosed in the specification are being referred to as elements of the claimed invention. *Id*.

35 U.S.C. § 112 ¶¶ 1–2 (2006) require that patent applications include both "a written description of the invention" and "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." The "subject matter" that a claim in a patent describes or denotes must appear in the patent's "written description of the invention," *id*. ¶ 1; for if it does not, the claim is void. *Festo*, 535 U.S. at 736 (2002) ("What is claimed by the patent application must be the same as what is disclosed in the specification; otherwise the patent should not issue."). If the Court were to interpret the disputed claim words as Bosch asks, the Court would then be duty-bound to declare the claims void as a matter of law. *See, e.g., O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 121 (1853) ("He can lawfully claim only what he has invented and described, and if he claims more his patent is void."); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1346 (Fed. Cir. 2010) (en banc).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*
Mary B. Graham (#2256)
Thomas Curry (#5877)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
tcurry@mnat.com
    *Attorneys for Costco Wholesale Corporation*

OF COUNSEL:

James W. Dabney
Diane E. Lifton
Richard M. Koehl
Stephen Kenny
Erik Huestis
Greta Fails
Stefanie Lopatkin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

May 19, 2015
9114820